## PETER DALTON, Respondent, v. JOHN S. BOWKER, APPELLANT.

MEASURE OF DAMAGES ON BREACH OF WARRANTY OF TITLE. In case of a breach of warranty of title of real estate, where there has been no fraud or concealment, the measure of damages is the value of the property at the time of sale, to be ascertained by the purchase-money, with interest thereon and the costs expended in defense of the title; and when the eviction is partial, the damages will be apportioned to the measure of value between the property lost and the property preserved.

DAMAGES ON WARRANTY, FOR EVICTION—"PRESENT VALUE" NOT RELEVANT. In a suit for breach of warranty of title, an instruction which directs the jury to consider the value of the property lost at the time of trial as the measure of damages, is error.

WARRANTY OF TITLE—EVIDENCE OF EVICTION AND OF SUPERIOR TITLE. In an action for breach of warranty of title, the judgment roll in a previous action by the same plaintiff against the evictors in which he failed to recover the premises warranted, is admissible in evidence as against any person who was neither party nor privy to it only for the purpose of showing an eviction: it is not even *prima facie* evidence that such eviction was by title paramount.

Dalton *v.* Bowker.

BREACH OF WARRANTY OF TITLE—VOUCHER OF WARRANTOR. In case of warranty of title, where there has been an eviction, the party evicted upon suing the evictor may notify his warrantor of the commencement of such action and require him to assist in its prosecution; and in such case the warrantor will be bound by the proceedings; but to have such effect the notice should be unequivocal, certain and explicit; and a mere notice before suit of an intention to sue and to insist upon the warranty is not sufficient.

WARRANTOR OF TITLE MAY BE VOUCHED TO PROSECUTE EVICTOR. When the vendor of land with warranty of title is properly notified of the pendency of an action by the vendee to recover it from an evictor and afforded an opportunity to assist in the prosecution, he becomes in effect the real party in interest; the same as if the vendee were the defendant in the action and the vendor were vouched to defend.

CONSTRUCTION OF DEED OF LAND "AND ALSO PRIOR RIGHT TO USE" WATER. Where a deed conveyed a tract of land "and also the prior right to use for irrigation and other farming purposes the one-half of the waters of Thomas Creek, the natural channel of which is situate in and through the above described land," and warranted "the title to said land and the use of said water": *Held*, that the water right warranted was not the mere right of a riparian owner, which would have passed by a deed of the land; but that the language employed and the use of the word "also" meant something in addition to the land and its incidents.

RIGHT TO USE OF WATER AS DISTINCT FROM LAND. Running water, as long as it continues to flow in its natural channel, can not be made the subject of private ownership except as a right incident to property in land; but a right may be acquired to its use by appropriation, which will be regarded and protected as property.

MEANING OF WORD "ALSO" IN DEED. The word "also" as used in a deed granting specific land " and also " a right which is not necessarily an incident of such land, implies something in addition to the land.

IF ONE PARTY TESTIFY TO CONVERSATION, THE OTHER PARTY MAY ALSO TESTIFY TO IT. In an action between the grantor and grantee of a deed, where it is a material question which of several streams was meant by the conveyance of a right to use the waters of "Thomas Creek": *Held*, that if plaintiff testify to any conversation between himself and defendant relative thereto, defendant has a right to state his recollection of what was said and testify in regard to the same conversation.

APPEAL from the District Court of the Second Judicial District, Washoe County.

The facts are stated in the opinion. The appeal was by defendant from the judgment and an order overruling his motion for new trial.

*Marshall & Blair*, for Appellant.

I.   The only estate conveyed by the deed from Bowker to Dalton is that described in the granting part thereof, and

any covenants therein can only apply thereto.   All after the
granting clause in reference to the waters of Thomas Creek
is mere surplusage and adds nothing to the effect or force of
the  deed  either  explanatory  or  otherwise.   It does not
amount to a grant of a water right, and conveys no more
than the ˙riparian rights naturally belonging, appurtenant
and incident to the land granted.    *Crosley* v. *Parker*, 4 Mass.
110; *Corbin* v. *Healy,* 20 Pick. 514; 4 Kent, 467.

II.   No latent ambiguity in the deed is shown and parol
testimony in relation thereto was inadmissible.   The court
could not legally assume the existence of a latent ambiguity.
2  Kent, 720, note c.; 1  Greenleaf, Sec. 297, *et seq.*   But if
the court was right in admitting testimony of plaintiff to
explain the deed in any respect, it was clearly wrong in ex-
cluding the testimony of the defendant upon the same point.

III.   Even if plaintiff sustained damage, it was damage
without injury; because it is shown by the testimony that
the property conveyed by Bowker to Dalton was and is
worth much more than the purchase-price thereof, exclusive
of all water and  water rights whatsoever.   And it is well
settled that the measure of damages upon covenants of war-
ranty is the purchase-price with interest.   4 Kent, 529–531,
and cases there cited.   But in this case the verdict was for
the *value,* not the *purchase-price* paid.   And necessarily so
under the instructions of the court below.˙

IV.   Bowker could not be affected by the judgment or
decree in the case of Dalton *v.* Libby & Lamburth, because
that was only in relation to waters of Thomas Creek above,
out of and beyond the land conveyed by Bowker to Dalton
and to which his deed can by no construction be made to
apply; for there is no grant of water or a water right except
such as necessarily may have been incident and appurtenant
to the land granted.

V.   The notice served on the defendant on April 14,
1871, was insufficient, as no suit had then .been commenced
and none was commenced until on or after April 24.   Such
a notice to be effective must be distinct and unequivocal
and expressly. require the party bound by the covenants to

appear and defend the adverse suit. Rawle on Covenants for Title, 229-257.

VI. Upon the failure of title in a specific part only of the subject of the sale, as in this case, the purchaser can recover only a portion of the price paid in a ratio to the amount of the part from which he was evicted, or the proportion which it bears to the price of the amount of the purchase-money. *Morris* v. *Phelps*, 5 Johnson, 56; Rawle on Covenants for Title, 90-91, 319-322; *Demmick* v. *Lockwood*, 10 Wend. 142; *Whitney* v. *Dewey*, 15 Pick. 428; *Catlin* v. *Hurlburt*, 3 Vt. 403.

*Haydon & Cain*, for Respondent.

I. The deed from Bowker to Dalton conveyed an unrestricted right to use one half the waters of Thomas Creek by priority anywhere on, above or below or on either side, for irrigation and other farming purposes, without any limitation of its use to the land conveyed. It mentions merely as a description of the Thomas Creek intended to be conveyed, that it is the Thomas Creek the natural channel of which is " situate in and through the above described land. " *McDonald* v. *Bear River Co.* 13 Cal. 220; *Ripley* v. *Welch*, 23 Cal. 452; *Morris* v. *Becknell*, 7 Cal. 261; *Davis* v. *Gale*, 32 Cal. 34. Defendant did not purport to convey in his deed a right as riparian owner—that would have passed as an appurtenance. Irrigation, except to a very limited amount, is not a riparian right. *Vansickle* v. *Haines*, 7 Nev. 249. See also, *Ophir Co.* v. *Carpenter*, 4 Nev. 153; *Lobdell* v. *Hall*, 3 Nev. 516; *Lobdell* v. *Hall*, 2 Nev. 277.

II. The point urged that as Bowker was not a party to the suit of Dalton v. Libby & Lamburth he was not bound by it, is subversive of the whole doctrine of suits on covenants of warranty. Acts of trespass, it is true, make no breach of such covenants; but when in a suit commenced to eject an evictor he pleads and maintains a superior adverse title, he shows by adjudication that he is no trespasser but a lawful claimant. The decree in Dalton v. Libby & Lamburth was conclusive that they lawfully claimed three-fifths

of the one-half of the waters of Thomas Creek, conveyed and warranted to Dalton. See 2 Greenleaf, § 244.

III. The notice by Dalton to Bowker was abundantly sufficient to put Bowker on his industry to maintain the title conveyed by him. Dalton could not compel him to sue; but as, if Libby and Lamburth, the persons whom he afterwards sued, remained in possession five years he would lose his right to the water and his recourse on the warranty, it was incumbent on him to commence suit. See 1 Abbott's Forms, 344.

IV. The point that the estate granted was the land and not the water, because only the land is mentioned in the granting clause of the deed, is clearly in misapprehension of what the granting clause in a deed means. The prior right to use half the waters of Thomas Creek for irrigation and other farming purposes is granted by and in the granting clause or part of the deed. The deed first grants the land and then grants the use of the water before the appurtenance clause, by the use of the word "also," without repetition of the words "bargain, sell, grant and convey."

By the Court, HAWLEY, J.:

This was an action upon a covenant of warranty. It appears from the testimony that on May 4, 1870, appellant Bowker conveyed to respondent Dalton a quarter section of land. After a proper description of the land, the following language is inserted in the deed, viz: "also, the prior right to use for irrigation and other farming purposes the one-half of the waters of Thomas Creek, the natural channel of which is situate in and through the above described land." By a covenant contained in said deed, Bowker "warrants the title to said land and the use of said water, and will defend the same against all persons lawfully claiming either said land or water."

On the 14th day of April, 1871, Wm. Libby and Thomas Lamburth diverted all the water flowing down the natural

channel of the stream which passed through the land conveyed to Dalton, so as to deprive him of the use thereof either for "irrigation or farming purposes." On the same day (April 14, 1871) Dalton served upon Bowker the following notice:

"Reno, Washoe County, April 14, 1871.

John S. Bowker, Esq. * * You are hereby notified that Wm. Libby and Thomas Lamburth have on this day * * deprived me of the use of all the water of Thomas Creek running down through the farm sold and conveyed by you to me, to wit: [Here follows a description of the land]; and you are hereby notified that I shall commence suit against said Libby and Lamburth to determine the title to said water to the extent of one-half of said creek, and that I shall hold you to your warranty of the title to me to the use of one-half of the water of said Thomas Creek and to your covenant to defend the same against all persons lawfully claiming said water. * * Peter Dalton."

On the 21st day of April, 1871, Dalton commenced an action against said Libby and Lamburth in the district court of Washoe County, to recover "one-half of the waters of Thomas Creek," alleging that the natural channel of the creek "runs through the land" conveyed to him by Bowker. Said cause was tried, and resulted in a decree from the court that plaintiff [Dalton] was entitled to two-fifths of all the waters of Thomas Creek, described in his complaint, and that defendants [Libby and Lamburth] "were entitled to the other three-fifths of the one-half of the waters of said Thomas Creek."

The present suit was commenced by plaintiff [Dalton] to recover of defendant [Bowker] the damages alleged to have been sustained by reason of defendant's failure "to warrant the title to said water." Plaintiff obtained judgment for $975 and costs   Defendant appeals.

Upon the trial of the case the court gave the following charge to the jury: "If the jury believe from the testimony

that this plaintiff purchased by deed for a valuable consideration from the defendant the 'prior right to use for irrigation and other farming purposes, the one-half of the waters of Thomas Creek, ·the natural channel of which is situate in and through' land conveyed by the same deed   *   *   * ;   that the defendant, by said deed, covenanted with the plaintiff to warrant and defend such prior right to use for irrigation and other farming purposes the water named in the deed; that by the lawful claim of one Libby and one Lamburth and by virtue of a decree of this court the plaintiff was deprived of three-fifths or less of the said water; that the defendant was by the plaintiff notified of the litigation in which such decree purports to have been entered before the commencement thereof in court; that in and about such litigation the plaintiff was necessarily put to expense for attorney's fees for the defense of such title; then the defendant was bound by the result of such decree and such covenant was broken   *   /*   * ;   and the jury will proceed to ascertain from the testimony what, if any, part of such water the plaintiff was so practically deprived of ; what, if anything, was the value of such part of such water; what, if anything, was a reasonable attorney fee; and you will find a verdict for plaintiff and designate in your verdict the amount, if any, in the aggregate of damages in such manner sustained by the plaintiff." Defendant excepted to the giving of this charge.

The instruction is clearly erroneous. It fails to state the true measure of damages to which plaintiff is entitled in the event of a recovery. By it the jury were to consider "what, if anything, was the value of such water." It is silent as to the time when this value is to be assessed; but it is evident from the testimony that it was the value at the time of trial that was to be considered by the jury.

The authorities in the different states upon this question are not uniform; some holding that the damages should be measured by the value of the land at the time of the eviction; others, following the rule· of the common law, that the value of the land at the time of sale as ascertained by the

purchase-money, together with interest and costs of eviction, constitutes the true rule by which the damages should be ascertained.

As this question has never been decided in this State we have examined the authorities *pro* and *con* with great care. By adopting the rule that the measure of damages should be limited to the consideration money and interest there is an absolute certainty by which the decisions of courts and juries can readily be determined. The parties ought not to complain of any hardship or injustice. The vendor sells for a certain sum and warrants the title to the property, and if there is an eviction he knows exactly what he will have to pay, and the vendee knows what he will receive. The vendee has the opportunity of examining the title before purchasing. If not satisfied with the title and the usual covenant of warranty, he has the right to insist on having other covenants inserted or he need not complete the purchase. By adopting the other rule it would be impossible for the vendor to know to what extent he would be called upon for damages in the event of eviction, and the vendee would have no security as to the amount he should receive. "When land is sold," says Walker, J., in *Threlkeld's Adm'r v. Fitzhugh's Ex'r*, 2 Leigh, 461, "the existing state of things, the present value and situation of the land, are the subjects in the minds of the parties: it is this land as it now is, that is bought and sold and warranted. Is it not most natural then to suppose that the parties mean that the purchase-money, the standard of value to which they have both agreed in the sale, shall be the measure of compensation if the land be lost? They seldom look into futurity to speculate upon the chances of a rise or fall in value. If they did, the views of buyer and seller would probably be very different and, whatever they might be, could form no part of the contract nor enter into its construction. What is it that the seller warrants? The land itself. Does this warranty either by force of its terms or by the intention of the parties extend to any future value which the lands may reach?" We think not.

Where there has been no fraud or concealment, we are satisfied that the value of the property at the time of sale, to be ascertained by the purchase-money, with interest thereon and the costs expended in defense of the title, is the measure of damages to be recovered; and where the eviction is partial (as in the case at bar) the law will apportion the damages to the measure of value between the property lost and the property preserved. The measure of damages in such cases is the value of the part to which the title had failed taken in proportion to the price of the whole property purchased, (the whole computation being on the basis of the consideration money.)

The views we have expressed are supported by numerous authorities. Rawle on Covenants for Title, 90, 91, 318,; *Staats* v. *Ten Eyck*, 3 Caines, 112; *Wilson* v. *Wilson*, 25 N. H. 229; *Kelly* v. *The Dutch Church of Schenectady*, 2 Hill, 116; *Pitcher* v. *Livingstone*, 4 Johns. 6; *Caulkins et al.* v. *Harris*, 9 Johns. 324; *Bender* v. *Fromberger*, 4 Dall. 442; *McNair* v. *Compton*, 35 Penn. State, 25; *Cox* v. *Henry*, 32 Penn. 18; *Nutting* v. *Herbert*, 35 N. H. 127; *Foster* v. *Thompson*, 41 N. H. 379; *Cox's Heirs* v. *Strode*, 2 Bibb, 273; *Jackson* v. *Turner*, 5 Leigh, 119; *Haffert's Heirs* v. *Buchetts*, 11 Leigh, 89; *Elliott* v. *Thompson*, 4 Humph. 101; *Bennett* v. *Jenkins*, 13 Johns. 50; *Kinney* v. *Watts*, 14 Wend. 40; *Peters* v. *McKeon*, 4 Denio, 549; *King* v. *Kerr*, 5 Ohio, 155; *Hunt* v. *Orwig*, 17 B. Monroe, 73; *Beaupland* v. *McKeen*, 28 Penn. State, 129; *Phillips* v. *Reichert*, 17 Ind. 120; *Wiley* v. *Howard*, 15 Ind. 169; *Major* v. *Dunnavant*, 25 Ills. 262; *Morris* v. *Phelps*, 5 John. 56. See also, Sedgwick on Damages, 182; 4 Kent. Com. 477, 580, 581.

In this case it appears that the land, water right and some personal property not mentioned in the deed were purchased for a gross sum without placing a specific value on each or any particular part. If, therefore, plaintiff is entitled to recover anything, it must be the value of the property lost in proportion to its relative value and importance when taken in connection with the whole.

The instruction is also objectionable in so far as the same

relates to the effect to be given to the notice, which was served upon defendant on the 14th ·day of April, 1871. It will be observed that upon the trial of the case the plaintiff was permitted against the objections of defendant to introduce in evidence the judgment roll in the suit of Dalton v. Libby and Lamburth, for the purpose of proving that plaintiff Dalton had been evicted by a superior title.

The judgment roll, under the testimony given upon the trial, was only admissible for the purpose of showing an eviction. It was not even *prima facie* evidence that such eviction was under title paramount as against this defendant, who had not been a party or privy to the proceedings. Rawle on Covenants for Title, 237; *Sisk* v. *Woodruff*, 15 Ills. 15; *Prewitt* v. *Kenton*, 3 Bibb. 282; *Devour* v. *Johnson*, 3 Bibb. 410; *Cox* v. *Strode*, 4 Bibb. 4; *Fields* v. *Hunter*, 8 Mo. 128.

When this plaintiff commenced suit against Libby and Lamburth he might have relieved himself from the burden of proving in the present action the validity of the title of Libby and Lamburth to the property in litigation in that suit, by notifying this defendant of the commencement of that action and requiring him to come in and assist in the prosecution of that case. In order to have made the result of that suit conclusive upon this defendant a notice should have been given him after the commencement of that suit. The defendant was not required to stand at the portals of justice from day to day to ascertain how, when or where the proposed suit was to be commenced. He ought not to be bound by any judgment or decree obtained in a suit where he was not a party actually or constructively, without an opportunity having been afforded him to come in and conduct or assist in conducting the proceedings in the case. He is entitled to his day in court and to have the opportunity of sustaining the title he has warranted. "To have the effect," as was held in *Paul* v. *Whitman*, 3 Watts & Sergeant, 409, " of depriving the warrantor of the right to show title, the notice should be unequivocal, certain and explicit. A knowledge of the action and a notice to attend the trial will not do,

unless it is attended with express notice that he will be required to defend the title. When the warrantor is properly vouched he becomes in effect the real party in interest to the ejectment. "

We refrain from expressing any opinion upon the question whether the notice must be in writing or whether it could be given by parol. The record before us does not properly present that question.

Upon the argument of this case it was claimed by counsel for appellant that a judgment against the vendee of land in an action of ejectment by him instituted against a third person in possession, with notice to the vendor to appear and prosecute the action, is no evidence of a better outstanding title. The position assumed by counsel is fully sustained by the case of *Ferrell* v. *Alder,* 8 Humph. 45. It was there held that "where the vendee has been sued, he may notify his vendor to appear and defend the suit, and provision is made by law for making him defendant; but there is no principle by which he can be substituted as a plaintiff in the action of ejectment." The opinion in that case is very brief and the reasons given by the learned judge fail to convince us of the correctness of the doctrine it asserts. When the vendor is properly notified of the pendency of such an action and afforded the opportunity to assist in the prosecution of the case, we are of opinion that he becomes in effect the real party in interest, the same as if the vendee was the defendant in the action. Does not the law give him the privilege to appear and prosecute the same as it does to defend? and if he fails in either case why should he not be bound by the proceedings in the one case as well as the other? We can not perceive any substantial difference. The judgment obtained against the vendee when he brings suit and properly notifies his vendor is as much evidence of an adverse title paramount to the vendor's, as it would be when the suit is brought against the vendee. See Rawle on Covenants for Title, 227, 228; and authorities there cited.

Defendant's counsel strenuously insist that the covenant of warranty contained in the deed only applies to the land,

and in support of this position claim that the descriptive clause in the deed relating to the waters of Thomas Creek is surplusage and therefore adds nothing to the force or effect of the deed.   This position we think untenable.   It is undoubtedly true that running water, as long as it continues to flow in its natural channel, can not be made the subject of private ownership except as a right incident to property in land; but it is well settled that a right may be acquired to its use by appropriation, which will be regarded and protected as property.   If the only interest which defendant had in and to the water of Thomas Creek was that of a riparian owner then it was entirely useless to insert the additional language in the deed, because such a right to the use of the water would have passed with the land without inserting the additional clause.   But it may be that defendant had, or pretended he had, acquired an additional right by appropriation to a given quantity of water in Thomas Creek "for irrigation and other farming purposes," and that the words "the natural channel of which is situate in and through the above described land" were inserted to designate the particular Thomas Creek, the prior rights to the waters of which were referred to in the deed.   The natural inference to be drawn from the language used in the deed is that some additional right was intended to be conveyed.   The grantor sold a specific quantity of land, "also, the prior right to use * * * one half of the waters of Thomas Creek"; that is, to use the meaning attached to the word *also* by lexicographers, the grantor *in like manner* sells, etc., or, in other words, the grantor, *in addition to* "the land above described," conveys "the prior right to use * * * one half of the waters of Thomas Creek."

Legal decisions give to the word *also* the same meaning and fully support the views we have expressed.   Beatty, C. J., in *McCurdy* v. *The Alpha G. & S. M. Co.*, 3 Nev. 37, said "the word *also* certainly implies something in addition to what has gone before."   In *Panton* v. *Tefft*, 22 Ill. 375, it was held that "the word *also* is never employed to confine

14

or limit what has been already said but is used to denote that something else is added to what precedes it."

There is but one other objection in the record which we deem necessary to notice. It appeared from the testimony that the stream (Thomas Creek) divided into two equal channels at a point about one-half of a mile above the land described in the deed; that such channels did not again join together, and that only one of such channels passed through the land conveyed to plaintiff by defendant. The question then arose whether the name Thomas Creek, as used in the deed, applied to the stream above the forks (one-half of the waters of which flowed down the channel "through the land" conveyed to plaintiff) or whether it applied to the stream below the forks (all the waters of which flowed down the channel through the land conveyed to plaintiff). To determine this question parol testimony was admitted and plaintiff was permitted to testify to a conversation which took place between himself and defendant prior to the purchase of the property. The defendant was allowed by the court to testify fully as to what particular stream was meant by the name Thomas Creek, but was prohibited from testifying to the conversation which plaintiff had already testified to. In this ruling we think the court erred.

It is only necessary here to state that if upon a new trial the plaintiff is permitted to testify to any conversation between himself and defendant relative to the question as to which particular stream—the one above or the one below the forks—the name Thomas Creek (as used in the deed) referred to, then the defendant should be allowed to state his recollection of what was said and to testify fully in regard to the same conversation.

The judgment and order appealed from are reversed and the cause remanded for a new trial.