JULIA B. WILSON, Appellee, *vs.* MARINDA WILSON *et al.*— (HARRISON WILSON *et al.* Appellants.)

*Opinion filed April 22, 1915—Rehearing denied June 10, 1915.*

1. DEEDS—*if there is no ambiguity extrinsic evidence is not admissible.* Where there is no ambiguity in the terms used in a deed, or where the language of the deed has a settled legal meaning, the instrument itself is the only criterion of the intention of the parties and extrinsic evidence is not admissible to aid in its construction.

2. SAME—*when testimony of scrivener as to his understanding of terms is not admissible.* A provision in a deed disposing of the land in case the grantee and his wife "should die intestate, (with no children,)" cannot be explained by testimony of the scrivener that he thought the words "intestate" and "with no children" meant the same thing, as such words have a settled meaning and the use of the parentheses is not controlling.

3. SAME—*when a provision is part of the granting clause.* A provision in a deed following the description of the land, to the effect that it is further provided that the above land is not to be transferred, but if the grantee and his wife shall. die intestate, with no children, then the lands are to be the undivided property of certain named persons, is part of the granting clause.

4. SAME—*what does not cut down fee to a life estate.* Where land is granted in fee, a gift over in case the grantee and his wife shall die intestate (with no children) does not cut down the fee to a life estate, as such provision must necessarily have reference to death either before or after the grantor's death.

5. SAME—*when gift over by deed is void.* If the first grantee is given an estate which he can dispose of in fee simple a gift over is void.

6. SAME—*what provision contemplates power to dispose of fee by will.* Where land is granted in fee but it is provided that it shall not be transferred, but if the grantee and his wife shall die intestate (with no children) the land shall be the property of other named persons, the reference to dying intestate contemplates power by the grantee to dispose of the fee by will, and the gift over is therefore void.

7. EQUITY—*allegations, proof and relief granted by the decree must correspond.* A decree cannot grant relief which the facts disclosed by the evidence would warrant, unless there are averments in the bill to which the evidence can apply.

FARMER, C. J., dissenting.

.APPEAL from the Circuit Court of Scott county; the Hon. NORMAN L. JONES, Judge, presiding.

W. B. STRANG, and THOMAS HENSHAW, for appellants.

T. J. & J. O. PRIEST, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by appellee in the circuit court of Scott county for the partition of a farm of about 106 acres. After the pleadings were settled the evidence was taken before a master, and thereafter a decree was entered by the court finding that appellee had a life interest in said property, and that, subject to said life interest, the appellants, Harrison Wilson and Thomas Wilson, owned the remainder in fee. From that decree this appeal was taken, appellee filing cross-errors.

From the record it appears that this farm was acquired in 1887 by John Wilson, (now deceased,) the husband of appellee, Julia B. Wilson. The evidence tends to show that William J. Wilson, the father of John Wilson, was a man of some means and had assisted several of his children, including John, each to secure a farm. Appellee was married to John Wilson in 1892. They had difficulty in their married life and in 1896 she consulted an attorney in relation to a divorce or separation. A document was drawn up in which they agreed to live separate and apart, and that in case said Julia B. Wilson should afterward apply for a divorce said John Wilson would not interfere in any way. The contract also recited that appellee had been paid by her husband $300 in cash. Shortly after this agreement was signed, the said John Wilson and wife, December 12, 1896, conveyed the premises here in question to John Wilson's father, William J. Wilson. Appellants argue that the consideration for this conveyance was the $300 mentioned in said agreement, while the appellee insists that John Wilson

coerced his wife into making this deed and no money was paid at the time of its execution. At or about the last mentioned date appellee went back to live with her husband and continued to live with him until she was adjudged insane, in 1902, and sent to the State hospital for the insane. She was back home at intervals after that but is now in the asylum. John Wilson died intestate October 10, 1912, leaving appellee as his widow and leaving as his only heirs-at-law his mother, four brothers and four sisters. No children were born to him.

October 27, 1900, William J. Wilson and wife conveyed the premises in question to their son, John Wilson. The deed was made on a printed "long form" warranty deed blank, and read, in part, as follows:

*"Witnesseth,* that the said party of the first part, for and in consideration of the sum of one thousand (1000) dollars in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain and sell, unto the said party of the second part, his heirs and assigns, all the following described lot, piece or parcel of land, situated in the county of Scott and State of Illinois, to-wit: [Here follows a description of the property.] It is further provided that the above land is not to be transferred, but if said John Wilson and Julia Wilson, his wife, should die intestate, (with no children,) the above described lands are to be the undivided property of my three youngest sons, Harrison, Thomas and Truman Wilson, but the said John Wilson, my son, is to have full control of the above described land during his lifetime, together with all and singular the hereditaments and appurtenances thereunto belonging. * * * To have and to hold the said premises above bargained and described, with the appurtenances, unto the said party of the second part, his heirs and assigns forever."

Counsel for appellants contend that the court erred in holding that appellee had a life estate in said premises, and argue that appellants, Harrison and Thomas Wilson, (the third brother, Truman, having died unmarried and without children,) at the death of their brother John became seized in fee of the land and were entitled to immediate posses-

sion, while counsel for appellee contend that under a proper construction of this deed John Wilson, as grantee, obtained a fee simple title, and that at his death his wife, there being no children, took, under the statute, a fee simple title to an undivided one-half of the farm and dower and homestead rights in the remaining half.

The man who drafted this deed testified that he was not a lawyer and had very little experience in drafting instruments of this kind; that he understood the word "intestate" to be the same as "with no children," and believed the grantors in said deed so understood those terms,—that is, that the words "with no children," in the parenthesis, were intended to be be used as synonymous with the word "intestate." The law is, that where there is no ambiguity in the terms used or where the language of the instrument has a settled legal meaning, the instrument itself is the only criterion of the intention of the parties and its construction cannot be explained by oral evidence. (*Fowler* v. *Black*, 136 Ill. 363; *Gage* v. *Cameron*, 212 id. 146; *Deemer* v. *Kessinger*, 206 id. 57; *Butterfield* v. *Sawyer*, 187 id. 598.) The word "intestate" has a settled legal meaning. The words "with no children" necessarily have but one meaning. The punctuation in this instrument will not be permitted to change the meaning, if, reading the instrument all together, the meaning is clear. (2 Devlin on Real Estate, sec. 844; 13 Cyc. 605, and cases cited.) So read, the words in question must be construed with their fixed and ordinary meaning; that is, if John Wilson and his wife, Julia, died intestate and with no children, then the remainder should go to certain designated brothers of John Wilson. This being so, oral testimony of the scrivener can not be considered in construing this deed.

Some discussion is found in the briefs with reference to whether the proviso as written in should be held a part of the granting clause or the *habendum* clause. Clearly, under the authorities, this proviso must be considered a part

268 – 18

of the granting clause. (*Smith* v. *Tucker*, 250 Ill. 50; *Morton* v. *Babb*, 251 id. 488.) The first part of the granting clause obviously, under our statutes, confers the fee upon the grantee, John Wilson, and the fee was held by him at his death unless it was cut down by the subsequent clauses in the deed. The gift over if John Wilson and Julia died intestate does not cut down the fee in John Wilson to a life estate. This court, in *Fifer* v. *Allen*, 228 Ill. 507, quoted with approval from Kales on Future Interests the following rule (p. 513): "In the case of a gift if the first taker die without issue, 'without issue' may mean 'if the first taker die in the lifetime of the testator without issue, then the second taker shall stand in his place to prevent a lapse.' This, however, must be an unusual construction and should require direct support from the context of the instrument. The primary and most usual meaning of the phrase 'die without issue' is, 'if the first taker die without issue, either before or after the testator's death.' " Under this rule the words in said proviso, "if said John Wilson and Julia Wilson, his wife, should die intestate, (with no children,)" must necessarily have reference to their death either before or after the grantor's death.

The words in the first part of the proviso, "It is further provided that the above land is not to be transferred," were manifestly inserted as a restraint upon alienation by John Wilson during his lifetime. The inference quite naturally arises from the insertion of these words that said John Wilson was to take a fee simple title subject only to the gift over, but that he was not to be allowed to dispose of this fee during his lifetime. What object could there have been for this insertion in restraint on alienation in connection with the gift over unless it was intended that he was to take the fee? This conclusion is strengthened by the insertion of the words thereafter found in said proviso, "if said John Wilson and Julia Wilson, his wife, should die intestate." John Wilson could not die intestate, as to

this property if he only had a life estate therein. The words in the last part of the proviso, "but the said John Wilson, my son, is to have full control of the above land during his lifetime," clearly do not cut down the fee to a life estate. These words are not restrictive in character. They were, without doubt, inserted to emphasize the fact that notwithstanding the previous restriction in the proviso John Wilson was to have full control and enjoyment of the land during his life.

It is the unquestioned rule of law in this State that an executory devise cannot be created if the estate devised to the first devisee is such that he can, through his ownership, alienate the estate in fee simple. If the first devisee has an estate which he can convey in fee simple, so as to destroy an attempted limitation over, such limitation is void. (*Williams* v. *Elliott,* 246 Ill. 548, and cited cases.) This rule necessarily applies in the same way where the instrument is a deed and the first grantee therein has an estate which he can convey in fee simple.

No case precisely like the one here, so far as we are advised, has been decided by this court. The one in which the facts are the nearest like those we are now considering is perhaps *Stewart* v. *Stewart,* 186 Ill. 60, where the instrument called a deed conveyed property to the grantor's wife, and at her death to the grantor's son, and at his death to his widow and children, if any living, and if none, to a named person, the title "to be in fee simple, and either party to have power to sell and make warranty deed while the title may be in such party." It was held that the first grantee took the title in fee, the gift over being void, and that this was true whether the instrument be construed to be a deed or a will.

*Holmes* v. *Godson,* 8 DeG., M. & G. 152, and *Gulliver* v. *Vaux,* id. 167, are somewhat similar, on the facts, to the case here being considered. In *Holmes* v. *Godson* the

testator gave real and personal property to his son, to vest
in him on his attaining twenty-one years, but if he should
die under twenty-one, or should die after having attained
twenty-one years but should not have made a will, the tes-
tator directed that in such case the property should be sold
and the proceeds should be held in trust. The decision
holds that the property vested in the son at twenty-one ab-
solutely, and that the gift over was repugnant and void. In
the *Gulliver case* the testator provided by his will that "if
the first takers should depart this life without leaving issue
lawfully begotten and born of any of their bodies and with-
out appointing the disposal of the same" there should be
a gift over, and it was held that the gift over was repug-
nant and void; that "appointing the disposal of the same"
necessarily meant appointing the disposal by will.

The grantors here certainly intended by the use of the
word "intestate," giving it the natural and usual meaning,
to authorize the first grantee to dispose of the particular
property by will. The grantee's interest is made expressly
non-transferable during life. The gift over could not be
read as taking effect if the son failed to alienate by deed
during life, as that would give the grantee the right to de-
feat the gift over during his life. The express declaration
in the proviso that the son was not to transfer the land in
question, construed with the rest of the proviso, especially
the word "intestate," leads necessarily to the conclusion
that the grantee was to have the right to dispose of the
land by will. The word "intestate," in the connection used,
is an appropriate one to confer upon the grantee the power
of defeating the gift over by making a will conveying the
property in fee. We know of no authority that holds that
a gift over is valid where the first grantee in a deed has
the absolute power of alienation in fee simple. On the
contrary, all authorities hold that if there is an absolute
power of disposition in fee simple in the grantee or devi-

see the limitation over must be void as a remainder, since a remainder implies something left, and there can be nothing left if the first taker can convey a fee simple title. On reason and authority, therefore, the gift over must be held void. The conclusion follows that John Wilson took the fee simple title in this property, and that on his death, intestate, without children, his wife, Julia Wilson, under the statute, took the fee simple title to an undivided one-half of said property with a dower interest in the remainder. Whether or not she also had a homestead interest would depend upon circumstances which do not sufficiently appear in this record. The remaining interest in said real estate became vested, at the time of the death of said John Wilson, in his collateral heirs, as provided by our Statute of Descent.

The argument of counsel for the appellee that she was coerced by her husband to join in the deed to the father, William J. Wilson, in December, 1896, and that she was out of her mind at that time, cannot be entertained, on this record. There were no allegations in the bill upon which any such relief could be based. It is a fundamental rule of equity pleading that the allegations of the bill, the proof and the decree must correspond; that the decree cannot give relief which the facts disclosed by the evidence would warrant, as to matters where there are no averments in the bill to which the evidence can apply. *Schmitt* v. *Weber*, 239 Ill. 377, and cases cited.

The decree of the circuit court will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.    *Reversed and remanded.*

Mr. CHIEF JUSTICE FARMER, dissenting.