QUEEN et al. v. TURMAN et al.
(No. 470–3850.)

(Commission of Appeals of Texas, Section A. Feb. 6, 1924.)

1. **Mines and minerals ⟜55(4)—Deed held to convey an interest in all minerals in tract of land.**

A deed conveying a "one-half interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described lands * * * being an undivided one-half interest in 60 acres out of my undivided one-half interest in and to 121 acres of land, more or less," followed by a description thereof by metes and bounds, and reciting the interest therein conveyed as "being all of the oil and minerals under an undivided 30 acres or one-half of same under an undivided 60 acres," conveyed an undivided one-half interest in all the minerals in and under the one-half undivided interest of the grantor in the 121 acres, where no partition of the mineral rights into blocks was made before the execution of the deed.

2. **Mines and minerals ⟜55(4)—Transferee under oil lease held to take mere possibility of reverter.**

Where a transfer of an interest in oil, gas, and minerals in land referred to a former lease as being valid, and the conveyance was made subject thereto, transferee acquired only a mere possibility of reverter in the oil, gas, and minerals in place in the ground.

3. **Lis pendens ⟜25(1)—One taking oil lease from owner of undivided interest held bound by partition proceedings.**

One owning an undivided interest in minerals in a tract of land held bound by pending partition proceeding to which he was not a party, where he took a lease from the owners of another undivided interest in such tract, stating that the tract of land was in process of partition, and on the day the lease was executed the partition was accomplished, and he was bound to pay the agreed royalty to the lessors as to the portion set aside to them.

4. **Judgment ⟜701—Members of joint-stock company bound by judgments in suits against company.**

Under Rev. St. art. 6151, stockholders and members of an incorporated joint-stock company are bound by judgments rendered in actions wherein it appears and this includes judgments in partition suits.

5. **Lis pendens ⟜25(1)—One paying only part of price before learning of decree an innocent purchaser, if necessary party and not joined.**

A purchaser of an interest in land who had only paid part of the purchase price at the time he obtained actual notice of a partition decree was an innocent purchaser of the whole interest, and not only to the extent of the amount actually paid at the time he acquired notice, if he was a necessary party to the partition suit and was not made a party.

Appeal from Court of Civil Appeals of Eighth Supreme Judicial District.

---

Suit by Lizzie Queen and others against L. C. Turman and others. From judgment of the Court of Civil Appeals (241 S. W. 786) modifying and affirming a judgment for defendants, plaintiffs bring error. Reversed and remanded.

Grisham Bros., of Eastland, and Whitaker & Peticolas, of El Paso, for plaintiffs in error.

Willis & Works, of Fort Worth, and Conner & McRae, and Sayles & Sayles, all of Eastland, for defendants in error.

GERMAN, P. J. On November 15, 1918, Mrs. N. O. Bearden executed and delivered to L. C. Turman a conveyance containing the following description and provisions:

"One-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Eastland county, Texas, being an undivided one-half interest in and to sixty acres out of my undivided one-half interest in and to (121) one hundred and twenty-one acres of land more or less, a part of the Juana Salinas headright survey, and thus described: (Here follows description by metes and bounds of the 121 acres.)

"The interest herein conveyed being all of the oil and minerals under an undivided thirty acres or one-half of same under an undivided sixty acres. It is understood and agreed that in the event an oil well producing as much as (200) two hundred barrels per day average and settled production is brought in on the land covered by this transfer said L. C. Turman, or his assigns, shall within 30 days after written demand pay to grantor twelve thousand dollars as additional consideration herein, otherwise this grant to become null and void. Hereby granting said Turman the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals, and removing the same therefrom.

"And said above-described lands being now under valid oil and gas lease originally executed in favor of B. J. Johnson et al. and now held by Hog Creek Oil Company and Magnolia Petroleum Company, it is understood and agreed that this sale is made subject to said lease, but covers and includes one-half of all the oil royalty and gas rental or royalty due and to be due under the terms of said lease, so far as it affects 60 acres out of my part of said 121 acres of land, and this agreement covers all corrected leases or additional leases on said land.

"It is agreed and understood that one-half of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease or additional leases due to be paid to the said N. O. Bearden on said 60 acres shall be paid to said L. C. Turman or assigns, and in the event that the said above-described lease for any reason becomes cancelled or forfeited, then in that event the lease interest and all future rentals on said land for oil, gas and mineral privileges shall be owned jointly by Mrs. N. O. Bearden and L. C. Turman in so far as it affects 60 acres, each owning an undivided one-half interest in all oil, gas and other minerals in and upon said land, together with one-half interest in all future rents."

At the date of this conveyance Mrs. Bearden owned an undivided one-half interest in the tract of land described in this instrument, and her children and grandchildren owned the other undivided one-half interest.

On November 20, 1918, decree of partition was entered in the district court of Eastland county, wherein Mrs. Bearden, the Hog Creek Oil Company, and all the other joint owners of the land were parties. By this decree the leasehold and mineral rights in this 121 acres of land were partitioned, a specific 79.9 acres being set apart to Mrs. Bearden and her son, A. Bearden, and as to this 79.9 acres the oil and mineral rights were vested in the Hog Creek Oil Company, in accordance with the terms and conditions of the lease theretofore executed by Mrs. Bearden and A. Bearden to B. J. Johnson and others. L. C. Turman was not a party to this partition proceeding. It is claimed by Lizzie Queen and others that prior to the date of the partition decree there was a parol partition of the leasehold and mineral rights, and that the court proceeding was merely to carry the parol agreement into effect.

After this partition numerous oil leases were executed by the various parties and oil was developed on all parts of the tract of land.

The contentions of the parties in this litigation may briefly be stated this way:

Lizzie Queen and others, who will be referred to as plaintiffs, are contending that by his purchase from Mrs. N. O. Bearden, L. C. Turman acquired an undivided one-half interest in the royalty coming to her under the lease to B. J. Johnson, held by the Hog Creek Oil Company, and that Turman and those holding under him are entitled to participate only in the royalties accruing from operations on the 79.9-acre tract. They further claim that Turman bought with knowledge of the parol partition agreement, and subject thereto, and was bound by the decree of partition entered on November 20, 1918, which was five days after his purchase from Mrs. Bearden.

Turman and those holding under him, who will be designated defendants, are contending that Turman, when he purchased from Mrs. Bearden, had no notice or knowledge of the parol agreement, and is not bound thereby, or by the decree of partition; and that by the terms of his conveyance from Mrs. Bearden he acquired an undivided interest of $30/121$ in the royalty in the entire tract, and not merely an undivided one-half interest in Mrs. Bearden's interest in the 79.9 acres. He, and those claiming under him, seek to recover the $30/121$ interest in all royalties produced by operations on the entire tract.

The jury, in response to special issue, found that there was no parol partition made

of the leasehold and mineral rights prior to November 20, 1918. Construing the instrument by Mrs. Bearden as conveying to Turman an undivided interest of $^{30}\!/_{121}$ in royalties accruing from the entire tract, the trial court gave judgment in favor of the defendants for the value of their part of such royalties. The Court of Civil Appeals modified and affirmed the judgment of the trial court. 241 S. W. 786.

The trial court submitted to the jury several special issues, but, due to the manner in which they were submitted, the jury only answered two of the questions. The substance of these answers was that there was no parol partition of the leasehold and mineral rights prior to November 20, 1918, and that Mrs. Bearden made demand on Turman for the additional consideration due under the lease prior to the time a well, having a settled production of 200 barrels per day, was brought in on lot No. 4.

The two principal contentions made by plaintiffs on appeal are these:

(1) That there was no evidence to support the finding of the jury to the effect that there was no parol partition of the leasehold and mineral rights prior to November 20, 1918.

(2) That the court erred in construing the conveyance from Mrs. Bearden to Turman as conveying an undivided interest of $^{30}\!/_{121}$ in the royalty in the entire tract, rather than as conveying only an undivided interest of 30 acres in the 79.9-acre tract known as lot No. 4.

Plaintiffs made no request for the submission of special issues and filed no objections or exceptions to the charge of the court or the issues submitted.

We think there is evidence in the record to sustain the finding of the jury to the special issues. While the testimony of defendants consisted largely in denial of any knowledge of the parol agreement, yet the circumstances were such that the denial by Turman of any knowledge of the agreement directly presented the issue as to whether or not it had ever been made; and the finding of the jury cannot be disturbed.

We do not think the recitations in the conveyance are sufficient to charge Turman with notice of the alleged parol agreement; and if it be true that there was no such agreement, then there could be no such thing as constructive notice of something that had not actually occurred.

[1, 2] The undoubted effect of the conveyance by Mrs. Bearden to Turman, except for the prior lease in favor of Johnson, was to vest in Turman an undivided one-half interest in all the oil, gas, and other minerals in and under the one-half undivided interest of Mrs. Bearden in the 121 acres of land. Its language in this respect is clear and unambiguous. However, as the Johnson lease was referred to as being valid, and the conveyance to Turman was made subject there-

to, it follows that the only interest which Turman acquired in the oil or gas while in place in the ground was the mere possibility of a reverter. Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779; Tiffany's Real Property, vol. 1, p. 472.

The oil lease by Mrs. Turman and A. Turman to B. J. Johnson and others is not in the record, but the clause in the conveyance by Mrs. Turman reading as follows, "said above described lands being now under valid oil and gas lease originally executed in favor of B. J. Johnson et al.," unmistakably indicates that the interest in royalty conveyed by Mrs. Bearden to Turman was in the same undivided one-half interest in which she had granted the oil, gas, and minerals. Therefore the trial court and the Court of Civil Appeals were correct in holding that the conveyance, standing alone, and in the light of the finding made by the jury, conveyed an undivided royalty interest of $^{30}\!/_{121}$ in and to the entire tract. However, we think there was error in permitting Turman and some of those holding under him to participate in all of the royalties from the entire 121 acres on this basis.

[3] On December 20, 1918, Lizzie Queen and her husband executed to L. C. Turman an oil and gas lease upon Mrs. Queen's undivided one-eighth interest in this 121 acres of land. Turman agreed to deliver to the grantors the usual one-eighth part of all oil produced from the land under this lease. This conveyance contains this provision:

"The said 121.3 acres belonging to several heirs and partition of said land being in process of adjustment, it is understood that in the event the partition of said land has been completed at this time that this lease is intended to cover and does cover the portion of said 121.3 acres set apart, or that may hereafter be set apart by agreement or any partition suit, to the said Mrs. Lizzie Queen (née Bearden)."

On the day this was executed the partition was accomplished, and there was set apart to Mrs. Queen lot No. 2 of 15 acres. The effect of this transaction unquestionably is that Turman can claim no part of the royalty arising from operations on this 15 acres. The consideration for the lease from Mrs. Queen to him was the entire one-eighth royalty, and she is entitled to receive that amount. We think the effect of this conveyance, so far as this 15 acres is concerned, was the same as if Turman had participated in the partition proceeding and had therein consented to relinquish his right to royalty in this 15 acres under the deed from Mrs. Bearden. It seems that this was not taken into consideration by the trial court in making distribution of the royalties to the various claimants.

The record shows that the Hog Creek Oil Company was an unincorporated joint-stock association, and that J. W. Potter was one of its trustees and members. In the parti-

tion proceeding referred to the Hog Creek Oil Company appeared by its attorney and requested that partition be made as prayed for. As above indicated, lot No. 4, containing 79.9 acres, was set aside to Mrs. Bearden and A. Bearden, and the oil and mineral rights in this 79.9 acres were vested in the Hog Creek Oil Company in accordance with the terms and conditions of the lease by Mrs. Bearden to Johnson and others. Afterwards, on December 4, 1918, Turman conveyed to J. W. Potter an undivided one-third interest in and to his undivided interest of 30 acres held by virtue of the conveyance from Mrs. Bearden to Turman. On December 31, 1918, the Hog Creek Oil Company, and J. W. Potter individually, conveyed to the Magnolia Petroleum Company an undivided one-half interest in the mineral rights and leasehold estate in lot No. 4 of 79.9 acres, expressly referring to the partition decree of November 20, 1918, and reciting that the prior lease by Mrs. Bearden to Johnson and others covered this particular 79.9 acres. The judgment of partition divested all interest of the Hog Creek Oil Company in all other parts of the tract except the 79.9 acres out of it and vested same in the other parties.

[4] It is provided by article 6151 of the statutes that in suits by or against unincorporated joint-stock companies, whatever judgment shall be rendered shall be as conclusive on the individual stockholders and members thereof as if they were individually parties to such suits.

The interest of J. W. Potter in this litigation is represented by Cleaves Rhea, guardian of the two minor children of Potter. Having participated in and having full knowledge of the partition decree at the time he acquired his interest from Turman, Potter and his heirs are not only estopped from claiming a royalty interest in any part of the tract except the 79.9 acres, but are bound in that regard by the decree of partition, unless for some cause same should be vacated.

[5] Plaintiffs urge the proposition that as Turman had actual notice of the partition decree within about 10 days after it was entered, and at that time having paid Mrs. Bearden only $3,000 of the purchase money, he cannot be protected as an innocent purchaser except to the extent of the amount actually paid at the time he acquired notice. This could not be true if Turman was a necessary party to the partition suit. If he were not a necessary party, the rule might have application. However, this question has not been presented nor argued, and we do not feel authorized to decide whether he was a necessary party or not.

The only evidence in the record as to the amount of royalty oil taken from the land by the Magnolia Petroleum Company is contained in an exhibit attached to the answer of that company. It shows the amount of royalty paid to different parties, as well as the amount it now has in hand. The agreement of the parties as to this exhibit limits its effect. In view of our holding herein as to the extent Turman and the Potter heirs are entitled to participate in the distribution of the royalty, we are not authorized to make the necessary findings of fact on which to base a judgment. The condition of the record is such that we think the case should be remanded as to all parties and all issues. All assignments not discussed in this opinion relate to matters which may not arise on another trial, and it is not necessary for us to consider same.

We recommend that the judgment of the Court of Civil Appeals and the judgment of the district court be in all things reversed and the cause be remanded.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.