KRUTZFELD, RESPONDENT, *v.* STEVENSON, TRUSTEE, ET AL., APPELLANTS.

(No. 6,547.)

(Submitted January 9, 1930.  Decided January 29, 1930.)

[284 Pac. 553.]

*Mr. Homer G. Murphy* and *Messrs. Hurd, Hall & McCabe,* for Appellants, submitted a brief; *Mr. George E. Hurd* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief and argued the cause orally.

468

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In June, 1926, the plaintiff, Cacilie Krutzfeld, filed complaint to quiet title to approximately 880 acres of land in Toole county, alleging that the defendants L. C. Stevenson, trustee, and Sunburst Oil & Refining Company claim some interest therein, but that such claims are without right. Answering, the defendants set up claims to certain proportionate interests in the oil and gas in and under the land, evidenced by three "mineral deeds" executed by plaintiff and her husband, and covering subdivisions of the land described in the complaint. By reply, plaintiff admits the execution of the deeds mentioned, but alleges that it was not intended thereby to convey any other interest than a royalty interest in any oil or gas which might be produced and saved under leases on the tracts described in the deeds, which leases have since expired. The reply further alleges misrepresentation with respect to the nature of the deeds made before signing, and asks for a reformation in the event the deeds are found to have the legal effect for which the defendants contend.

The cause was tried to the court without a jury, and, during the trial, plaintiff expressly renounced any claim to reformation, and failed to show any misrepresentation or fraud or to introduce any evidence on which the court could say that she did not intend to execute deeds conveying the interest claimed by the defendants.

The record discloses that in 1920 plaintiff divided her land into two tracts, and leased them separately to one Frank Kitchen for oil and gas exploration. Each lease was for a term of five years, or longer, if oil or gas was produced, with the usual provision for forfeiture and privilege of paying delay

rental in lieu of operation. Each required the lessee to deliver to the lessor one-eighth of all oil produced and saved and to pay a certain amount for gas produced.

In 1921 plaintiff executed a like lease to one K. G. Luke, covering the full 880 acres.

These leases being recorded and all, apparently, in full force and effect in December, 1922, plaintiff and her husband executed the three instruments to L. C. Stevenson, trustee, on which defendants base their claim.

The deeds in question were drawn on a printed form, which was evidently used in drafting the deed considered in *Hochsprung* v. *Stevenson,* 82 Mont. 222, 266 Pac. 406. The form is one evidently in use in the oil industry, as the deed construed in *Queen* v. *Turman,* (Tex. Com. App.) 257 S. W. 1092, is identical in its wording with the Hochsprung and Krutzfeld deeds. A synopsis of one deed will be illustrative of all.

Exhibit "A" reads: "Know all men by these presents that John Krutzfeld and Cacilie Krutzfeld, his wife, * * * have and by these presents do grant, bargain, sell, convey, set over and assign and deliver unto L. C. Stevenson, Trustee, the following, to-wit: * * * 5% interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands, * * * together with the right of ingress and egress * * * for the purpose of mining * * * and removing the same therefrom.

"And said lands being now under * * * lease * * * in favor of K. G. Luke * * * it is understood and agreed that this sale is made subject to said lease, but covers and includes two-fifths of all oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is agreed and understood that two-fifths of the money rentals which may be paid to extend the term of said lease is to be paid to the said L. C. Stevenson, Trustee, and, *in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event the lease interests and all future rentals on said land for oil, gas and*

*mineral privileges shall be owned jointly by John Krutzfeld & Cacilie Krutzfeld, his wife, and L. C. Stevenson, Trustee, each owning ⅗ and ⅖ respectively in all oil, gas or other minerals in and upon said land, together with same proportionate interest in all future rents."* The consideration recited is $1.00 "and other valuable considerations." The *habendum* clause contains warranty of title.

The above clause is italicized herein for future reference, as the right of the defendants to any interest in excess of five per cent of the oil and gas in or under the land depends upon its validity and operation.

Exhibit "B" is identical with Exhibit "A," except that it describes other lands, the total acreage described in the two being all of plaintiff's 880 acres, and does not give the name of the lessee.

Exhibit "C" is in like form, but does not contain a warranty clause; it refers to one of the Kitchen leases, and grants an additional one per cent "royalty interest," and refers to a two twenty-fifths interest in the subsequent clauses. Therein the lands affected are those described in Exhibit "B."

In 1924, having acquired the lease on the tract described in Exhibit "A," the Potlatch Oil & Refining Company released by executing a quitclaim deed to plaintiff to the first tract, and, having acquired the Luke lease, on March 29, 1926, the Sunburst Oil & Refining Company duly released it of record. In February, 1926, Stevenson, trustee, conveyed his interest under Exhibit "B" and "C" to his co-defendant here.

While the recited consideration in each of the three deeds is but nominal, based on the actual consideration therefor, Exhibit "A" shows "$4.00 revenue stamps, affixed," Exhibit "B," $2, and Exhibit "C," 50 cents revenue stamps affixed.

Following the decision in the *Hochsprung Case,* above, the trial court found that the Sunburst Oil & Refining Company was the owner of six per cent of the oil, gas and other minerals in and under the one tract, described in Exhibits "B" and "C," and that L. C. Stevenson, trustee, was the owner of five per cent of the oil, gas and other minerals in and under

the tract described in Exhibit "A," but declared that the defendants owned no greater interest in the oil, gas or other minerals, for the reason that the italicized clause in each deed was "wholly ineffective and inoperative for any purpose," and thereupon quieted title in plaintiff in and to ninety-four per cent as to the one, and ninety-five per cent as to the other, of the oil, gas and minerals in and under the land. From the judgment so quieting title, the defendants have appealed, making numerous specifications of error, which bring up for our consideration the question of the correctness of the court's construction placed on the three deeds in evidence, and, incidentally, the correctness of the conclusion reached in the *Hochsprung Case* as to the italicized clause in the deed there construed.

The trial court's decision in the *Hochsprung Case* might have been sustained, on the evidence adduced, on the theory that there had been no meeting of minds—the parties had never agreed that the grantee should take a greater interest in the premises than was described in the granting clause of the deed considered; but our opinion is grounded solely upon the rule stated that an instrument containing no granting words conveys no title, and, raising the italicized clause bodily from the deed and construing it as though it constituted the entire instrument for consideration, it is declared to come within that rule. This treatment of the deed in that case brings the case at bar squarely within, and on all-fours with, the *Hochsprung Case*; the trial court was justified in rendering the judgment it did, and under the doctrine of *stare decisis* the judgment herein should be affirmed; but the *Hochsprung Case* was but recently decided, and, on a reconsideration of the question presented, while we do not say that the result reached was not correct, we have arrived at the conclusion that the reason for the decision does not justify it, nor do the cases cited in its support warrant the application of the rule announced, as will appear from their analysis.

In *McGarrigle* v. *Roman Catholic Orphan Asylum*, 145 Cal. 694, 104 Am. St. Rep. 84, 1 L. R. A. (n. s.) 315, 79 Pac. 447,

the grantor deeded a life estate to McGarrigle, and declared in the instrument that it was "the purpose" of the grantor that, on the death of the grantee, the lands "shall become and be the property of" the orphan asylum. The court pointed out that, not only did the clause not contain words of grant, but the object of the grantor's bounty was not made a grantee, and, as the grant was but for life, a reversion was left in the grantor concerning which she merely expressed her *purpose* of making a future disposition when the property should revert to her, which purpose could only be effected by "some future conveyance."

In *Webb* v. *Mullins,* 78 Ala. 111, it is merely declared that an *habendum* merely, with no granting clause or its equivalent in the instrument, was ineffectual to pass title.

In *Long* v. *Holden,* 216 Ala. 81, 52 A. L. R. 536, 112 South. 444, 446, the *grantee* wrote into a deed the clause "it is so understood that at my death this land is to go to my daughter." The court held the clause ineffectual to create a remainder under the statutes of Alabama, and did not comply with statutory requirements for the making of a deed.

In *Smith* v. *Williams,* 141 S. C. 265, 54 A. L. R. 964, 139 S. E. 625, 626, the grantor, Smith, deeded certain lands to his wife's parents for life, declaring in the deed that, after their deaths "the right * * * and interest in the above lands to belong to me and my wife." The supreme court of South Carolina declared that it was questionable whether an estate by entirety could be created in that state in view of "the Separate Estates Act"; that the deed failed of the necessary requirements to create a survivorship, and could not be construed to "submerge" the grantor's reservation of interest in himself by granting a life estate in property standing in his name only, and the question of lack of granting words was mentioned merely as "another defect in the deed that makes its construction questionable."

In each of the cases cited, the decision is based on more cogent reasons than the lack of granting words in the clause considered, and that defect is but a secondary reason given;

whether the courts would have decided any one of those provisions ineffective to convey title, had the only defect been in lack of granting words in the particular clause, while the deeds contained an adequate granting clause, is doubtful.

The treatment accorded the deed in the *Hochsprung Case* ▮ was undoubtedly correct under the ancient practice wherein a deed was divided into parts, as the "premises, *reddendum, habendum, tenendum* and conclusion," and each was required to be considered alone, but "the modern tendency is to ignore the technical distinctions between the various parts of a deed and to seek the grantor's intention from them all, * * * every intention of the parties to a deed is to be ascertained, if possible, from its language, not as it is presented in particular sentences or paragraphs, but according to its effect when viewed as an entirety." (*Musselshell Valley F. & L. Co.* v. *Cooley,* ante, p. 276, 283 Pac. 213, 218.)

The rule announced in the *Hochsprung Case* still applies where a purported deed contains no operative words of grant (18 C. J. 178), but the deeds under consideration contain a superabundance of such words, and it is only because the italicized clause, considered alone, contains no such words that it was said in the *Hochsprung Case* that the deed there considered granted but the interest described in the "premises."

Plaintiff now comes into a court of equity, and, in effect, ▮ says: "It is true Stevenson and I agreed that I was selling him a two-fifths interest in all that I should ever receive from the development of my land for oil and gas, whether by means of the existing lease or any future lease or operation, and I crystallized that agreement into my solemn deed and received therefor an adequate consideration amounting to several thousand dollars, but the deed was so drafted that, in law, it conveys only a two-fifths interest in the royalty oil and gas rentals which I would receive under the lease mentioned and, as the lease has expired, he takes nothing and I retain the consideration paid; I therefore now ask this court, in equity and good conscience, to quiet my

title to the land as against any right he has under my deed."
The position taken is shocking to a court of equity which
considers that done which should have been done (sec. 8758,
Rev. Codes 1921), and cannot be maintained if, on sound
rules of law and equity, effect can be given to all of the
provisions of the deeds before us and the intention of the
parties carried out.

It will be noted that these deeds contain three explana-
tory clauses inserted between the "premises" or granting
clause and the *habendum*, the third of which is the itali-
cized clause under consideration. Considering the deeds as a
whole, under the modern rule, these explanatory clauses but
make clear the intention of the parties, and should be con-
sidered, if divisions are made, as a part of the granting
clause, and, so considered, may either enlarge or diminish
the grant so long as it deals with the identical property or
interest described in the granting clause; and likewise, where
explanatory clauses are incorporated in the *habendum*, if
the intention of the parties is clearly expressed, the *habendum*
may control over the granting clause, as every deed or con-
tract is supposed to express the intention of the parties
executing it, and, when called in question in a court, the first
inquiry is as to what that intention was as expressed in the
instrument, and it is the duty of the court to carry out
that intention, if no legal obstacle lies in the way. (*McCurdy*
v. *Mining Co.*, 3 Nev. 27; *Dalton* v. *Bowker*, 8 Nev. 201;
*Powers* v. *Hibbard*, 114 Mich. 553, 72 N. W. 347; *Wilson*
v. *Terry*, 130 Mich. 78, 89 N. W. 568; *Bodine* v. *Arthur*, 91
Ky. 53, 34 Am. St. Rep. 162, 14 S. W. 904; *Wilson* v. *Wilson*,
268 Ill. 270, 109 N. E. 36.)

Considered as a whole, Exhibit "A," for example, evidences
the intention of the grantor to sever the so-called mineral
rights from the surface of her land and to convey to the
grantee a two-fifths interest therein, and the agreement of
the grantee to purchase such right and pay therefor a sub-
stantial consideration, amounting to several thousand dollars,
in the hope or on the expectation that oil and gas would be

produced through the agency of leases. However, as the land was then leased, the parties evidently conceived the idea that the full interest could not be conveyed *in praesenti* and adopted the involved method of effecting the conveyance expressed in the deed. Under the lease eighty-seven and one-half per cent of the oil and gas produced and saved would be retained by the lessee and twelve and one-half per cent delivered to the land owner; the deed therefore conveyed outright five per cent or two-fifths, of the royalty oil, and then declared that this amount should be delivered to the grantee while the lease was in force, but that, if the present lease should be forfeited or canceled, the grantor should "own" two-fifths of all oil and gas. This, then, is a grant of a two-fifths interest in all that the land owner would receive from the land during the life of the lease, and a two-fifths interest in all of the oil and gas in or under the land when the same shall have reverted to the land owner on forfeiture or cancellation of the lease.

It would seem that the intention of the parties, as it appears from the deed, could have been better expressed by a deed *in praesenti* of a two-fifths interest in the oil and gas in or under the land, subject to the lease, but the fact that they effected a conveyance in the present only as to that interest in so much of the oil and rentals as would come to the land owner under the lease, and then enlarged the grant by a division of the reverter, does not, necessarily, defeat their intention and contract.

We are dealing here only with the mineral rights in the land, the title to which did not pass to the lessee by the lease mentioned; his title was in the term, not in the land (Mills & Willingham on Oil and Gas, sec. 45; *Homestake Exploration Corp.* v. *Schoregge*, 81 Mont. 604, 264 Pac. 388), and the interest of the lessor is a reversion (Mills & Willingham on Oil and Gas, sec. 138). Such a reversion, or the possibility of reverter, is a vested right which may be conveyed, and the time when the enjoyment thereof shall

begin may be made to depend upon a future event. (Secs. 6700, 6729, 6730, Rev. Codes 1921; 30 C. J. 1473, 1474.)

That under such circumstances as we have for consideration, or circumstances analogous thereto, the grantor could, and did, convey an interest in all oil and gas and other minerals which underlie her land, is supported by the following authorities: *Queen* v. *Turman,* above; *McCurdy* v. *Mining Co.,* above; *McKernon* v. *Josey Oil Co.,* 106 Okl. 100, 233 Pac. 451; *Stanley* v. *Slone,* 216 Ky. 114, 287 S. W. 360.

Under the deeds considered, L. C. Stevenson, trustee, is the owner of a two-fifths interest in and to all the oil, gas and other minerals in and under 560-acre tract described, and the Sunburst Oil & Refining Company is the owner of a twelve twenty-fifths interest in and to all of the oil, gas, and other minerals in and under the remainder of plaintiff's land.

In so far as the decision in *Hochsprung* v. *Stevenson,* above, is in conflict with this opinion, it is expressly overruled.

The judgment is reversed and the cause remanded to the district court of Toole county, with direction to enter judgment in conformity with this opinion and to quiet title in plaintiff only as to the appropriate remaining interests.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.