PETER M. WICKSTRUM AND ERIC H. SWENSON v.
MARIA T. CARTER.

**No. 370.**   ( 58 Pac. 1020.)

EVIDENCE— *Value of Real Estate—Expert Testimony.* **In** de-
termining the value of real estate there are two well-recognized
principles, the value may be shown by the testimony of experts,
or by that of ordinary witnesses who have special knowledge of
the property.  The value of lands is not a question of science or
skill upon which only experts can express an opinion.  While it
is always proper when practicable to show the market value of land
in cases like this, yet. if there have been few or no sales of like
property in that vicinity at or about the time in question, then
its reasonable value can be determined by considering all the
facts upon which values are usually predicated.

Error from Clay district court; W. S. GLASS, judge.
Opinion filed November 18, 1899.   Affirmed.

*Coleman & Williams*, for plaintiffs in error.

*F. P. Harkness*, for defendant in error.

The opinion of the court was delivered by

McELROY, J. :  This action was brought by Maria
T. Carter in the district court of Clay county against
Wickstrum & Swenson.   Plaintiff alleged in her peti-
tion, in substance, that she employed defendants to
act as her agents in the purchase for her of a resi-
dence property consisting of two and one-half lots in
Lincoln Park, an addition to Clay Center, known as
the Bagby property ; that the defendants entered upon
the work of purchasing the property, but, in violation
of their duty, the defendants secretly, maliciously, and
with intent to cheat and defraud plaintiff, obtained a
deed to the premises from the owner thereof convey-
ing the same to Peter M. Wickstrum, one of the de-
fendants, which was done without the knowledge or

consent of the plaintiff; that thereafter defendants caused the property to be conveyed to one Kalin, a relative of Swenson; that the defendants could have purchased the property for plaintiff for $400; that the actual value of the property was $1200; and that she was damaged by reason of the misconduct of the defendants, and prayed judgment.

The defendants, for answer, filed a general denial. A trial was had before the court and a jury. When the plaintiff had rested her case, the defendants filed a demurrer to the evidence, which was overruled, and the defendants then introduced their evidence and rested. The trial resulted in a verdict and judgment for plaintiff in the sum of $225. A motion for a new trial was filed and overruled. The defendants, as plaintiffs in error, present the case to this court for review.

The plaintiffs in error contend that the court erred in permitting witnesses to testify to the value of the property in question without qualifying such testimony by stating the market value. This objection goes to the testimony of Carter, Underwood, Woods, Langworthy, Slade, and perhaps another.

The witness Carter described the property as two and one-half lots situated in Lincoln Park, an addition to Clay Center, with a building about 24 x 26 feet, two stories high, mansard roof, with basement, and an addition 14 x 16 feet, one story, shingle roof; a barn sixteen feet square, hip roof; hydrant and cistern. The lots originally slanted; on the lower side there is a stone wall two and one-half or three feet high; lots filled so that they are level; shade-trees on the premises. He testified that the property is located eight blocks from the court-house and about the same distance from the high school; that he knew the value

of real estate in the vicinity of the property in question. He was then asked: "I would ask you to state then, from this investigation that you have made, from your knowledge of the values of real estate there, to state what that property is worth?" Defendants objected to the question as incompetent, irrelevant, and immaterial, and that the witness had not shown himself competent to testify upon the matter about which he was interrogated. The objection was overruled. The witness answered that the property was worth about $1200.

The other witnesses described the property in question perhaps less in detail, and testified to the value of the property the same as Carter, with the same objection. The witness Woods further testified that most of the properties in Lincoln Park addition were foreclosed and passed into the hands of the mortgagees, that perhaps one-half of the buildings were moved out, and that all the cheaper houses were practically abandoned. Such properties as that owned by the witness, the Bagby property and the Higinbotham property were not in the market. He tried to buy the Bagby property but it was not in the market; he also tried to buy the Higinbotham property; it was not in the market; these parties did not care to sell at the prevailing prices; hence their properties were not in the market, nor were they at any time abandoned.

The witness Langworthy testified in substance the same as Carter, and, after stating that there had been a great many houses moved away from Lincoln Park addition, stated further:

"Ques. Now, was you familiar with the prices that real estate in that neighborhood was selling? Ans. I do not know; I think not.

"Q. Did you know of any real estate up in that

neighborhood selling along about that time at all? A. I do not.''

The testimony tends to show that there was no very well-defined market value for the property in question. In determining the value of real estate there are two well-recognized principles — the value may be shown by the testimony of experts, or by that of ordinary witnesses who have special knowledge of the property. The value of lands is not a question of science or skill upon which only experts can express an opinion. The opinions of ordinary witnesses who are acquainted with the property, know its situation, size, appearance, location, etc., are admissible for the purpose of showing value, and this whether they know of any sales in the immediate vicinity or not. That fact goes to the value of the testimony rather than its competency. If they are able to testify that they know the value of the land in that neighborhood, know the property in question, and are able to describe it from actual observation, they are competent to testify concerning its value.

In that part of the city of Clay Center where the property in question was located, many of the buildings were removed, few desirable properties remaining in 1897. These properties, witnesses say, were not on the market, and it is apparent they had no well-defined market value. The testimony showing the description of the property, its size, appearance, location, followed by declarations of the witnesses that they knew the value of the property in that vicinity, together with the statement as to what the property was worth in the opinion of the witnesses, was competent. While the market value of real estate may, and ought to be, shown where it has a well-defined market value, yet the value of the property in ques-

Wickstrum v. Carter.

tion comes directly within the exception.   A property situated as was the property in question in this case has a value regardless of whether any recent sales have been made of similar property in that vicinity or not. In real estate, the location of the property, description, size, usable value or rental value are all collateral matters which tend to show the value of the property. The court committed no error in the admission of evidence.   This principle is recognized in the case of *K. C. & S. W. Rld. Co. v. Ehret*, 41 Kan. 22, 20 Pac. 538, and cases there cited.

The alleged error of the court in overruling the demurrer to plaintiff's evidence is based upon the contention that no competent evidence of value had been offered.   It is sufficient to say that there was some competent testimony tending to show the value of the property in question.

It is contended further that the court erred in refusing to allow the defendants, upon cross-examination, to inquire concerning the selling price of an adjoining property.   There was no foundation laid for the admission of such testimony by comparison.   This evidence was properly excluded.

It is contended that the court erred in instructing the jury.   Herein complaint is made that the court instructed the jury

"that the measure of damage would be the difference between the price for which plaintiff could have purchased the property through defendants as her agents, including as a part of such price reasonable commission to her agents, and the value of the property at that time."

This instruction was followed by another which fully explains and qualifies the term "value" as used therein :

"In determining the reasonable market value of

the premises in question, you are to consider only their value in the market at the time stated. This does not mean what the property would bring at forced sale, nor what some person under peculiar circumstances might be willing to pay for it, but such sum as the property was worth in the market; that is, to persons generally, if those desiring to purchase were found who were willing to pay for its just, fair value."

The court properly instructed the jury. The motion for a new trial was properly overruled. The judgment will be affirmed.