ROY A. JUDD, Appellant, v. Wm. K. BALL and
LILLIE BALL, his wife, Respondents.

No. 3214

December 1, 1937.                    73 P.(2d) 830.

*Clel Georgetta,* for Appellant.

*George Gunzendorfer,* for Respondents.

## OPINION

By the Court, DUCKER, J.:

Respondents noticed a motion to dismiss the appeal
from the judgment and from an order denying a motion
for a new trial. The grounds alleged in the motion are
that the undertakings filed in support of the appeals are
insufficient. It is also alleged, that "said motion to
dismiss the appeals will be made upon the further

ground that the undertaking to stay execution is insufficient and void."

■■ After the notice to dismiss the appeals was served, appellant's counsel presented to the justices of this court an undertaking on appeal and an undertaking to stay execution, which, after their approval by the justices, were filed in this court. On the hearing of the motion, counsel for respondents conceded that the approved undertaking on appeal was a good and sufficient undertaking and that his motion to dismiss the appeals could not, therefore, be granted. We are of the same opinion.

Section 27, Stats. 1937, c. 32, at page 62, provides for the giving of such an undertaking where the original is insufficient. Counsel for respondents argued that this court was without jurisdiction to approve the undertaking to stay execution, and moved to strike it. No notice was given that such a motion would be made. It is therefor denied.

The motion to dismiss the appeals is denied.

ON THE MERITS

September 7, 1938.                    83 P.(2d) 353.

*Clel Georgetta,* for Appellant:

*George Gunzendorfer,* for Respondents:

## O P I N I O N

By the Court, DUCKER, J.:

This action was commenced to foreclose a chattel mortgage. The defendant, appellant here, answered, making certain denials, setting up an affirmative defense, and interposing two counterclaims for damages. It will be convenient to refer to the parties as plaintiffs and defendant.

The mortgage given on certain livestock was executed to secure a promissory note for $587. Trial of the cause by the court resulted in a judgment for plaintiffs for the entire amount of the principal and interest of the note, together with an attorney fee and costs, less the sum of $120 allowed defendant as damages. The appeal is taken from the judgment and order denying the motion for a new trial.

Plaintiffs were the owners of and had resided on a ranch property of sixty acres of land in Washoe County for a number of years prior to the transaction out of which this controversy arose. Beginning on June 28, 1933, defendant made several visits to the property in contemplation of its purchase. On January 7, 1934,

they agreed on the terms and conditions of the sale of the property, including a forty-acre tract adjoining the same, and on May 11, 1934, by a grant, bargain and sale deed plaintiffs sold to defendant the said 100 acres of land. The price agreed to be paid for the land was $4,000, and the amount of the principal of the promissory note sued on represents the unpaid balance of the purchase price.

It appears that plaintiffs did not have title to said forty acres of land described in the deed, and defendant's defense and claims for damages alleged in his answer are predicated upon the claim that plaintiffs, prior to the sale, represented to him that they had title to said forty acres.

Defendant's pleading in this regard is also predicated upon the claim that plaintiffs, prior to the sale, represented to him that a certain natural reservoir site in Jumbo canyon in the vicinity of the lands, was upon public lands owned by the United States, and could be utilized by the owner on possession of the lands, whereas, in fact said site was on privately owned land and could not be so utilized.

It is alleged in said defense and counterclaims that the above representations were inducements to defendant to purchase said lands, were relied on him as true, and known to plaintiffs to be untrue. It is also alleged therein that shortly after the sale of the lands defendant was dispossessed of said forty acres and has been unable to obtain the title in fee or the right to possession of the same to the present time, to his damage in the sum of $2,500. Damages for the alleged false representation in regard to the reservoir site are laid at $2,000.

The trial court found against defendant upon all issues of fraud and in this connection found that on or about January 7, 1934, plaintiffs agreed to sell to defendant their ranch in Jumbo canyon, Washoe County, Nevada, consisting of sixty acres of land, and

also forty additional acres of land adjacent to said sixty acres; that plaintiffs represented to defendant that they had been promised by the Realization Company, a corporation of the State of Nevada, a deed to said forty acres for certain services rendered by them to said company; that plaintiffs agreed that if and when they obtained a deed to said forty acres of land to convey the same to defendant; that plaintiffs had title in fee absolute to sixty acres of land described as the $SE\frac{1}{4}$ of the $NW\frac{1}{4}$ and the $W\frac{1}{2}$ of the $SW\frac{1}{4}$ of the $NE\frac{1}{4}$ of section 5, T. 16 N., R. 20 E., together with such water rights and appurtenances as belonged to the same; that the representations made by plaintiffs to defendant respecting the forty acres of land described as the $SW\frac{1}{4}$ of the $NW\frac{1}{4}$ of said section were true and made in good faith; that before the Realization Company executed such deed to plaintiffs, all of its property, rights and assets were by foreclosure or otherwise vested in the United Nevada Bank of Reno, Nevada, which refused to recognize the agreement of the Realization Company to convey the said parcel of forty acres to plaintiffs, but did offer to sell the same for the sum of $120, all of which facts defendant had actual notice and knowledge previous to the 14th day of May 1934, the date on which said promissory note and chattel mortgage to plaintiffs, and plaintiffs' deed to defendant were respectively executed and delivered; that at the instance and request of said defendant and in order to avoid the expense of executing and recording a separate deed thereof, plaintiffs included in their conveyance of sixty acres, hereinbefore described, the said additional forty acres, said plaintiffs and defendant anticipating the ultimate conveyance to plaintiffs of said forty acres; that thereafter said defendant, or Leon Judd, the foster son of said defendant, purchased from the United Nevada Bank the said forty acres for the sum of $120. That at all times from on or about the 28th day of June 1933, defendant had actual knowledge and was fully aware of the fact that

plaintiffs did not own or have title to the said forty acres of land, and had actual knowledge of the said agreement between plaintiffs and said Realization Company; that defendant visited the said lands and inspected the same on at least four different occasions between the 28th day of June 1933, and the 7th day of January 1934, on which latter date plaintiffs delivered possession to defendant of said sixty acres, including all water rights belonging thereto, and defendant and his family removed thereto and at all times thereafter up to the time of the trial of this action resided thereon and now reside thereon, and during which period defendant had every opportunity to investigate and ascertain the true status of the title to said forty acres of land; that on January 7, 1934, the title to said forty acres of land was in the Realization Company and was then and now is of the value of $120.

■ Insufficiency of the evidence to justify the decision of the court was one of the grounds of defendant's motion for a new trial, and among the many assignments of error is one that the findings are contrary to the evidence. The evidence is voluminous but we have reviewed it in its entirety and are satisfied that there is substantial evidence in proof of all the findings that are essential to support the judgment.

The issues of fraud were sharply controverted, as was defendant's knowledge of the status of the title to the 40-acre tract contained in the deed to him from plaintiffs at the time and for some time before the deed was made. The trial court accepted the testimony of plaintiffs as true in those respects, and we are without jurisdiction to say that the court was mistaken in giving to it that degree of credibility. We deem it unnecessary to set out the testimony, especially as counsel for appellant has not, either in his briefs or oral argument, seriously contended that the evidence is insufficient to support the findings or judgment. His main reliance is on errors at law committed at the trial.

■ The first error claimed is that the court adopted the wrong measure of damages in insisting that only proof of the market value of the forty-acre tract at the time of the sale would be admitted. It is insisted that the true measure of damages in the case was the value of the forty acres of which defendant was dispossessed, in proportion to the value of the whole acreage purchased. We are referred to Dalton v. Bowker, 8 Nev. 190; Hoffman v. Bosch, 18 Nev. 360, 4 P. 703; and Thomas v. Palmer, 49 Nev. 438, 248 P. 887, as declaring that rule. We are of the opinion that the market value at the time of the sale was not the correct measure of value to be applied in a case of this kind. On the contrary, the value at the time of the sale of the property lost must be ascertained with reference to the purchase money and is, as decided in Dalton v. Bowker, supra, "in proportion to its relative value and importance when taken in connection with the whole." This is the settled rule in this state where the property is purchased for a gross sum without placing a specific value on each or any particular part. Dalton v. Bowker, supra. The reasoning upon which the rule rests that the purchase money is the proper basis for computation as to the value, is lucidly stated in the above opinion quoting from Threlkeld's Adm'r v. Fitzhugh's Ex'x, 29 Va. 451, 2 Leigh 451, 461: " 'When the land is sold, the existing state of things, the present value and situation of the land, are the subjects in the minds of the parties: it is this land as it now is, that is bought and sold and warranted. Is it not most natural then to suppose that the parties mean that the purchase-money, the standard of value to which they have both agreed in the sale, shall be the measure of compensation if the land be lost? They seldom look into futurity to speculate upon the chances of a rise or fall in value. If they did, the views of buyer and seller would probably be very different and, whatever they might be, could form no part of the contract nor enter into its construction. What is

it that the seller warrants? The land itself. Does this warranty either by force of its terms or by the intention of the parties extend to any future value which the lands may reach?' We think not."

The reasoning upon which the rule we sanction rests where there has been a failure of title to part of a tract conveyed, and when a gross sum has been paid for the whole, is logically stated in 4 Kent's Commentaries, 13 Ed., p. 478, as follows:

"If the eviction be only a part of the land purchased, the damages to be recovered under the covenant of seisin are a ratable part of the original price; and they are to bear the same ratio to the whole consideration that the value of the land, to which the title has failed, bears to the value of the whole tract.    *    *    *

"The measure of compensation for a deficiency in the quantity of land, in the case of a sale by the acre, unattended by special circumstances, has been assumed, in some cases, to be the average and not the relative value. . But in cases of eviction of a specific part, justice evidently requires that a relative, instead of the average value, be taken as the rule of computation; for though the part lost may not be one tenth part of the quantity of land purchased, it may be nine tenths of the value of the whole; or it may be one half part of the land sold, and yet it may be the rocky or the barren part of the farm, and not one hundredth part of the value of the remaining moiety."

Modern authority is also in conformity with this rule. In 66 C. J. 1597 the text reads: "Ordinarily, the measure of damages, where the title has failed to part of the tract conveyed, is such proportion of the consideration as the value of that part of the land bears to the value of the whole tract, together with interest on such proportion."

■■    The case at bar falls within the rule. There was no purchase of the 100 acres by acre or different price for any specific part. A lump sum of $4,000 was

agreed to be paid for the whole. In Dalton v. Bowker, supra, the action was upon a covenant of warranty, it is true, but this court has held that there is no distinction as to measure of damages where action is based on breach of contract and on breach of warranty. Thomas v. Palmer, supra. Notwithstanding the trial court fell into error as to the proper measure of damages, we are of the opinion that it was error without prejudice. In the first place, counsel for defendant undertook to prove the market value of the forty-acre tract. Failing in this no offer to prove the relative value of the forty acres was made. He therefore cannot be heard to say that he was deprived of a substantial right by the error of the court in insisting on the market value. Moreover, the error was nonprejudicial for another reason. That defendant was deceived or led to the belief by plaintiffs that they had title to the additional forty acres before or at the time of the transfer, is negatived by the findings of the court. There was not even a mutual mistake involved, which has been held a basis of damages. Cox v. Barton, Tex. Com. App., 212 S. W. 652. Defendant, when he accepted the deed and for some time prior thereto, was fully aware that plaintiffs had no title to the forty acres, but only a promise thereof. As there was no fraud, which is the basis of defendant's claim for damages, there was no action on the part of plaintiffs that can be said to be the natural and proximate cause of damages to defendant. He lost nothing through their deception.

If, as defendant claims, the trial court was in error in preventing him from introducing evidence as to the measure of damages other than the market value, how could he have been injured? Under the view taken by the court on the basis of fraud, which, under the circumstances, is binding on this court, defendant was not entitled to recover in any event. It appears that the forty-acre tract of land was subsequently purchased by a third party from the title holder for $120 and the

trial court found such to be its value, and that defendant has suffered damages to that extent by reason of the failure of the plaintiff to convey the forty acres of land. We think this should not have been allowed, but defendant may not be heard to complain of such favorable finding. True, the evidence shows that plaintiffs felt in some way morally bound to make reparation to defendant to that extent, and endeavored to buy the land from the Realization Company for that price so as to deed it to defendant, but were unable to do so; that they afterwards offered defendant $120 and he would not receive it. However, plaintiffs were not legally bound for the payment of damages in any amount. The trial court having found plaintiffs to be without fraud, and that defendant accepted the deed with full knowledge of the facts, any damage he may have suffered was damnum absque injuria. It may have been that the trial court was influenced to find that the defendant suffered damages in the amount of $120 on account of plaintiffs attitude in the matter evincing some moral responsibility and not because they were legally bound. In the trial court's opinion, found in the record, it is said: "The damages, *if any*, that defendant sustained by not getting title to that forty acres of land would be $120.00 and no more." And again, it is said: "The only damages that defendant has sustained is the sum of $120.00, and the testimony is *rather questionable even upon that phase of it.*"

But, as we have previously stated, defendant's damages, if any, were without legal redress and the adoption by the court of 'a wrong rule for the measure of damages is immaterial.

■ Of the many assignments of error, the only other one that counsel for defendant discussed in his oral argument is assignment number 5, to the effect that it was error for the court to refuse to allow certain well-qualified witnesses to testify as to the market value of the forty acres of land. We have reviewed the record

as to this assignment and find it to be without merit. Moreover, as we have seen, if error had been committed in this regard, it could not have been of reversible character.

Counsel for defendant did not in his oral argument discuss any other assignments, but we have reviewed them and find them to be without merit.

The judgment and order denying a new trial are affirmed.

ON PETITION FOR REHEARING

Dec. 9, 1938.