JESS CHANCE, MILDRED F. CHANCE, JESS A. CHANCE, JR., AND JANICE CHANCE, PLAINTIFFS AND APPELLANTS, v. FRANK H. ARCULARIUS, DEFENDANT AND RESPONDENT.

No. 3637

January 24, 1951.                    227 P.2d 198.

*Carville & Carville,* of Reno, and *Wm. J. Crowell,* of Tonopah, for Appellants.

*Gray & Horton,* of Ely, for Respondent.

## OPINION

### ON MOTION TO DISMISS APPEAL

By the Court, BADT, C. J.:

Appellants, plaintiffs below, appealed from an adverse judgment and from the order denying their motion for

a new trial. Respondent has moved to dismiss the appeal from the order denying new trial upon the ground that such appeal is ineffectual for lack of an undertaking on such appeal.

Appellants' notice of appeal to this court recited that they appealed "from the judgment [describing it] and from an order denying a motion for a new trial [describing it]." On the same day they served and filed their undertaking on appeal reciting: "Whereas, the plaintiffs in the above entitled action have appealed * * * from a judgment entered against them in said action [describing it], now therefore in consideration of the premises and of such appeal, we, the undersigned, * * * do hereby jointly and severally undertake and promise, on the part of appellants that the said appellants will pay all damages and costs which may be awarded against them on the appeal, or on a dismissal thereof, not exceeding $300.00. * * *" After respondent had served and filed his notice of motion to dismiss the appeal from the order denying new trial on account of lack of bond, appellants submitted to the justices of this court an amended undertaking which recited that whereas the plaintiffs had appealed from the judgment and the order denying new trial, the sureties "do hereby jointly and severally undertake and promise, on the part of appellants that the said appellants will pay all damages and costs which may be awarded against them on the appeal from said judgment *or said order denying motion for new trial,* or on a dismissal thereof * * *." Upon the presentation of such amended undertaking on appeal, the justices of this court approved the same without prejudice to the right of respondent to move to vacate such approval, or to proceed with his pending motion to dismiss. The approval of the amended undertaking, without prejudice as aforesaid, was made pursuant to that part of sec. 9385.77, N.C.L. 1931–1941 Supp., reading as follows: "No appeal shall be dismissed for insufficiency of the undertaking thereon;

provided, that a good and sufficient undertaking approved by the justices of the supreme court, or a majority thereof, be filed in the supreme court before the hearing upon motion to dismiss the appeal; * * *." Appellants point out that their notice of appeal specifically indicated that they appealed both from the judgment and from the order denying a new trial and contend that the failure of the first undertaking to refer to the appeal from the order created a situation contemplated by the above-quoted portion of sec. 9385.77. Respondents contend that the appeal from the judgment and the appeal from the order are two separate and distinct appeals and that the sureties on the first undertaking only obligated themselves in the event of an affirmance of the judgment or in the event of a dismissal of the appeal from the judgment; that they did not obligate themselves upon the affirmance of the order denying new trial or upon a dismissal of the appeal therefrom and that the first undertaking on such appeal was not merely insufficient, under the wording of the statute, but was totally lacking. Appellants refer to the liberality expressed in other parts of sec. 9385.77, to the policy expressed that no appeal shall be dismissed for any defect or informality in the appellate proceedings until the appellant has been given an opportunity to amend or correct such defect and to the effect that the appeal shall not be dismissed for any irregularity not affecting the jurisdiction, where such defect or irregularity can be cured by amendment. Appellants also refer to the often expressed policy of this court to dispose of appealed cases on the merits whenever that can lawfully be done. To this policy we have always adhered and still adhere, and the present case, involving as it does important range rights and stockwatering rights of the respective parties, presents an instance in which the court would much prefer to give effect to this liberal policy if it could be lawfully done.

However, the decisions of this court as well as decisions of the courts of California, Idaho, Montana, North Dakota and other states require such dismissal. In the absence of the filing of the undertaking within the statutory time, the appeal is not "effectual for any purpose." N.C.L. sec. 9385.66. This court has repeatedly held that the filing of the undertaking is jurisdictional. The first undertaking filed by appellants was no undertaking on the appeal from the order denying new trial. Magee v. Whitacre, 60 Nev. 202, 96 P.2d 201 (appearing in Pacific Reporter under its original title of Magee v. Lothrop), 106 P.2d 751. Section 9385.77 merely authorizes the filing of a new bond to cure an insufficiency. It does not authorize the filing of a bond after the expiration of the statutory time where none has been filed. Twilegar v. Stevens, 49 Nev. 273, 244 P. 896, 897. In that case, as in the present one, appellant contended that this court had held contra in Shute v. Big Meadow Inv. Co., 41 Nev. 361, 170 P. 1049, but the court said that the question had neither been raised nor determined in the Shute case. The court further said: "The statute does not say that when there is a failure to file an undertaking relief may be had in the manner stated." See also Jasper v. Jewkes, 50 Nev. 153, 254 P. 698, and Lippert v. Lippert, 51 Nev. 370, 277 P. 1. Appellants have cited no cases from this or other jurisdictions, holding that under similar conditions, and under similar statutes, the appellants have been permitted to file a new bond and thus perfect their appeal. It is true that appellants have referred us to several cases in which the court, in dismissing the appeal, remarked that the appellant had not seen fit to take advantage of the remedial statute, similar to our sec. 9385.77, and intimated that the court would in such event have accepted the new bond and refused to dismiss the appeal. In each case, not only was this by way of dictum, but the question as

to whether the new bond supplied such "insufficiency" or cured such "defect" as was contemplated by the particular statute, or whether it attempted to supply an absolute lack of a bond filed within the statutory period, was neither argued nor determined. Judd v. Ball, 58 Nev. 404, 73 P.2d 830, 82 P.2d 353, relied on by appellants is so lacking in facts as to the nature of the "insufficiency" in the bond there appearing that it is of little assistance. Counsel for respondent in that case conceded that the new bond, filed under the statute, supplied the "insufficiency," and it was therefore accepted. As the Twilegar case said of the Shute case, we must say of Judd v. Ball that the point was neither submitted nor determined. All cases in which the precise point has been considered support the motion to dismiss. See particularly Spokane Cattle Loan Co. v. Crane Creek Sheep Co., 36 Idaho 786, 213 P. 699, and Little v. Thatcher, 151 Cal. 558, 91 P. 321.

Accordingly, the motion to dismiss the appeal from the order denying the motion of appellants for a new trial must be granted, and such appeal is hereby dismissed.

## ON MOTION TO STRIKE

Respondent has also moved to strike certain parts of the bill of exceptions. Such parts include all of volume I, entitled transcript of proceedings, and a list of sixteen documents from volume II, comprising sundry documents, stipulations, orders, motions, etc., not embraced within our statutory definition of the judgment roll. The record shows that both of these volumes were served upon respondent within the statutory period as extended by stipulation and were filed within the time as extended by order of court. Volume I, the transcript of proceedings, was duly certified by the court reporter. The main confusion grows out of the fact that volume I, though requiring no certificate other than that of the reporter, is followed by this certificate of the district

judge: "I hereby certify that the foregoing bill of exceptions is correct, and contains the substance of the proceedings relating to the point or points involved, and has been settled and allowed." It is dated September 19, 1950. Volume II, containing some 27 indexed pleadings and documents, is not settled by stipulation or order of court,. but is followed by a stipulation dated September 1, 1950, to the effect that the transcript of proceedings as certified by the court reporter constitutes the bill of exceptions on appeal. Apparently the stipulation of counsel should have been attached to volume I and the certificate of the district judge to volume II. The district judge, by a subsequent certificate, recited the inadvertence in the action of the clerk and the fact that his certificate was to the complete record on appeal, consisting of volumes I and II, and should have been attached to volume II. Respondent does not controvert the facts, but attacks the jurisdiction of the district judge to execute such later certificate and also moves to strike such certificate. This court has under similar circumstances often remanded a record to the district court so that it might be made to speak the truth. This is the most that the court would be inclined to do under the circumstances, and inasmuch as the district judge's later certificate as to the inadvertence is not controverted, no purpose would be served in doing this. See Taylor v. Taylor, 56 Nev. 100, 45 P.2d 603, Id., 58 Nev. 149, 72 P.2d 1105. With the dismissal of the appeal from the order denying new trial, we cannot say at this time just what use appellants will make of the two volumes comprising the bill of exceptions.

In Magee v. Whitacre, 60 Nev. 202, 96 P.2d 201, 204 (appearing in Pacific Reporter under its original title of Magee v. Lothrop), 106 P.2d 751, this court, after dismissing the appeal from the order denying new trial, then considered the motion to strike the bill of exceptions. Speaking through ORR, J., it said: "This is denied. If reasons exist why this Court cannot consider

the bill of exceptions on the appeal from the judgment, respondents may present them in their briefs on said appeal."

The motion to strike volume I of the bill of exceptions comprising the reporter's transcript of proceedings is denied. The motion to strike the sixteen documents from volume II of the bill of exceptions is denied. Time for appellants to serve and file their opening brief on their appeal from the judgment shall commence to run upon their receipt of a copy of this opinion and decision.

EATHER, J., concurs.

HORSEY, formerly C. J., did not participate, his term of office having heretofore expired.

MERRILL, J., did not participate, having become a member of the court after said matter was argued and submitted.

ON THE MERITS

November 8, 1951.                           237 P.2d 204.

*Carville & Carville,* of Reno, and *William J. Crowell,* of Tonopah, for Appellants.

*Gray and Horton,* of Ely, for Respondent.

## OPINION

By the Court, BADT, C. J.:

We heretofore dismissed the appeal from the order denying appellants' motion for a new trial, such appeal being ineffective for want of filing of an undertaking. Chance v. Arcularius, 68 Nev. 51, 227 P.2d 198. However, we denied respondent's motion to strike the transcript of the proceedings, following the action of this court in Magee v. Whitacre, 60 Nev. 202, 96 P.2d 201 (appearing in Pacific Reporter under its original title of Magee v. Lothrop), 106 P.2d 751, in which it was said that respondents might present in their briefs on the merits reasons why this court could not consider the bill of exceptions on the appeal from the judgment. In refusing to strike the transcript however, we stated: "With the dismissal of the appeal from the order denying new trial, we cannot say at this time just what use appellants will make of the two volumes comprising the bill of exceptions," (Volume II being the transcript of proceedings). Thus we have before us in any event an appeal from the judgment alone in which we may consider such errors as appear from the judgment roll. Appellants contend however that inasmuch as the transcript of the proceedings has not been stricken the court may and should consider the same, not for the purpose of determining the sufficiency

of the evidence to support the findings and judgment, but to determine whether there is *any* evidence in support thereof. In support of this contention appellants rely upon Sweet v. Sweet, 49 Nev. 254, 243 P. 817, in which case appellant did not perfect her appeal from the order denying new trial and the appeal was only from the judgment. This court there said:

"We agree with counsel for respondent to this extent— that we cannot consider the sufficiency of the evidence, because the appeal is from the judgment, and not from the order overruling the defendant's motion for new trial. We are of opinion, however, that, upon exceptions to a judgment, and upon appeal therefrom, we can examine the evidence to determine the legal question whether there is any evidence to support the judgment."

No authority was cited in support of this statement and no reason given for announcing such rule of law. After making the statement, the court proceeded to a discussion of the pleadings and the questions of law involved and the conclusion reached, and then states: "We have examined the evidence to determine whether there is any legal evidence to support the judgment, and, being of opinion that there is, the judgment is affirmed."

Despite this rather summary recognition and disposition of the point and the lack of authority or reason for the stated rule, appellant insists that the rule was thereafter approved in In re Benson's Estate, 62 Nev. 376, 151 P.2d 762, 763. This court there said: "It is stated in appellant's closing brief that on appeal from a judgment, even if the sufficiency of the evidence cannot be considered where there has been no motion for a new trial, this court can nevertheless determine whether there is *any* evidence to support the judgment. It was so stated in Sweet v. Sweet, 49 Nev. 254, 258, 243 P. 817." Again this court cited no other authority nor did it give any reason in support of such rule. However, despite this apparent lack of enthusiasm in referring to the Sweet case, the court did proceed to examine the evidence, to the extent of quoting five questions and

answers, and concluded: "There was some evidence, at least, to support this finding, and in the absence of a motion for a new trial this court will not consider the question of its sufficiency."

The rule of the Sweet case was again advanced in Richards v. Steele, 60 Nev. 66, 99 P.2d 641, 643, 100 P.2d 72, and the court, on the appeal from the judgment alone, said, citing the Sweet case: "* * * we can therefore examine the evidence to determine the legal question whether there was *any* evidence to support the judgment." It recites the appellant's contention "that there was *no* evidence" to justify the decision and "a total failure of proof." The court then discusses the pleadings and points to a single item of proof—a deposit of $2,400 in postal savings account so as to place it in the infant's exclusive control as constituting some substantial evidence of a gift. On rehearing, 60 Nev. 72, 100 P.2d 72, 73, the court again refers to the Sweet case and says that the sole question before the court was "whether there was *any* substantial showing to support the judgment."

The Sweet case was again cited in Monitor Pipe & Steel Co. v. Flanigan Warehouse Co., 63 Nev. 449, 451, 172 P.2d 846, 847. No motion for a new trial had been made, but the parties stipulated to a bill of exceptions and record on appeal, including pleadings, evidence, a deposition, etc. Respondent moved to strike the same, but the court held that its contentions could be better considered on the appeal on the merits. The court there referred to appellant's contentions as follows: "Appellant does not question the well-settled rule that when there has been no motion for a new trial, the supreme court will not inquire into the sufficiency of the evidence to support the trial court's findings. He expressly admits that he is in no position to question its sufficiency on this appeal. He does maintain, however, that on appeal from the judgment alone this court may examine the evidence to determine the legal question whether there is a total failure of proof to support the judgment. In support of this contention he cites [Sweet v. Sweet, Richards v.

Steele and Benson's Estate]." There appears no word of approval of the rule itself.

In 1935, Stats. 1935, chap. 90, p. 195, the legislature passed a new act regulating new trials and appeals, and in 1937 again passed an entirely new act regulating such proceedings, repealing all acts in conflict but reenacting many of the sections of the 1935 act. Stats. 1937, chap. 32, p. 53.

In Neill v. Mikulich, 57 Nev. 307, 64 P.2d 612, 614, under an appeal from the judgment, it was insisted that the 1935 amendments permitted the court to consider the insufficiency of the evidence. The point was not narrowed to the question of total lack of evidence, but the holding of the court is nonetheless significant. The court held that the rule had not been changed by the 1935 statute and that the only way the court could consider the sufficiency of the evidence, rulings upon instructions, etc., was "for the aggrieved party to make his motion for a new trial and to appeal from an adverse ruling." The significance of the case concerns its consideration by the court in Snyder v. Garrett, 61 Nev. 85, 115 P.2d 769, 771. This opinion involved the 1937 New Trials and Appeals Act, and the appellant, appealing from the judgment alone without moving for a new trial, insisted that the sufficiency of the evidence could be considered on such appeal under the provisions of the 1937 act. With TABER, J., dissenting, the court reviewed the new act, the old sections reenacted, the significance of the omission of other sections, quoted the foregoing language from Neill v. Mikulich, referred to the recognized practice before this court from earliest times and emphasized the reason for the rule, namely, "that the trial court may first have an opportunity to rectify an error, if one was made, without subjecting the parties to the expense and annoyance of an appeal." The court said it was not reasonable to believe the legislature intended such a radical change in the practice existing for almost three quarters of a century without resorting to explicit language to denote its intention.

The rule stated in Sweet v. Sweet that even in the absence of an appeal from an order denying new trial and even in the absence of a motion for new trial, the court may nevertheless consider the transcript to determine whether there is *any* evidence to support the findings, has not, so far as we have been able to discover, been approved by any other court having similar statutory provisions. We are not here concerned with that exception to the "substantial evidence rule" which permits consideration, on appeal from an order denying new trial, of the assertion that there is no substantial conflict in the evidence upon any material point and that the decision is against such evidence upon such point, or where the decision is manifestly and palpably contrary to the evidence (Kitselman v. Rautzahn, 68 Nev. ......, 232 P.2d 1008, and cases therein cited), or the assignment that, upon all the evidence, it is clear that a wrong contention has been reached (Consolazio v. Summerfield, 54 Nev. 176, 10 P.2d 629).

We are satisfied that the rule in Sweet v. Sweet is not sound, that it is contrary to the recognized practice in this state since our earliest opinions, that it tends only further to confuse the situation where there is no appeal from an order denying a new trial, and that to all intents and purposes it nullifies the main rule that the *sufficiency* of the evidence cannot be considered on an appeal from the judgment alone. If, upon a simple assertion by the appellant that there is *no* evidence to support the findings, he is entitled to refer to the entire transcript of the evidence, the next step is to insist upon his right to show that there is no *competent* evidence to sustain the findings, or, though the evidence be concededly competent, that it was neither *relevant* nor *material,* that it was *unworthy of belief,* that its effect was destroyed by admissions made by witnesses on cross-examination, that it was entirely *rebutted* by other evidence. If these be the natural consequences of the rule in Sweet v. Sweet, and we think they are, then we have done away with the main rule to which the *no evidence*

rule is something in the way of an exception. The reason for such main rule as quoted above applies a fortiori to a contention that there is *no* evidence to support the findings. If a trial court, to avoid the expense and annoyance of an appeal, must first be given an opportunity, by motion for new trial, to correct its error because of *insufficiency* of the evidence, there is all the more reason that it should be given such opportunity by reason of an *entire lack* of evidence. In the latter case it would seem that the error would be more readily found than in the former. The present appeal furnishes an excellent example of our conclusion.

Appellants brought their action in the district court to restrain respondent from interfering with their grazing rights and stock watering privileges upon the public domain in Ralston Valley, Nye County, Nevada, alleging their use of the range through themselves and their predecessors for over forty-five years. They claim that these rights were established under the 1925 stock watering law and under the 1931 grazing law. Respondent claimed the same range, or part thereof, under similar usage and custom through himself and his predecessors, and asserted in addition that by agreement between the predecessors of the respective parties there had been an agreed division of such range. The valley runs in a northerly and southerly direction from the Tonopah-Ely highway on the south to the town of Belmont on the north, and is divided by what is known as the Belmont or Ralston-Rye Patch Wash running northerly and southerly through the valley and into which drain the waters from higher forest lands on the east and west.

The usual plat was an exhibit in the case. It indicates this section of the public range as running approximately 35 miles north and south and 12 to 15 miles east and west. The index to the transcript shows that fifteen witnesses testified, and the transcript itself comprises almost 400 pages of testimony. Exhibits included some nine stock watering right certificates and a number of deeds. Appellants' opening brief lists nine persons who

grazed their stock on the range as the common predecessors of appellants and respondent in watering and ranging cattle. The opening brief likewise lists the witnesses who testified to what appellants define as the following subject matters: (a) location and formation of the Belmont or Ralston-Rye Patch Wash; (b) the ranging and watering of cattle by the parties and their predecessors in Ralston Valley; (c) the friction between the cattle and sheep owners; (d) the first grazing of sheep (other than the Potts sheep) in Ralston Valley; (e) the manner of the operation of livestock by various parties; (f) the grazing of sheep by sundry predecessors on the west side of the valley; (g) the proposition that cattle and sheep cannot operate successfully upon the same range.

Respondent's memorandum refers to the testimony of numerous witnesses asserted to establish the open, notorious, continuous, peaceable use of the range by respondent and his predecessors to such extent as amply to support the findings and judgment. Both parties discuss at length the ownership of the stock watering rights in the range area, and the nature of the use made thereof.

The foregoing picture, brief though it is, gives some idea to courts familiar with cases of this kind of the general nature and scope of the testimony adduced. Yet appellants, while recognizing the rule that we cannot pass on the sufficiency of the evidence, insist that a search of the entire record will reveal that there is *no* evidence to support the trial court's findings, and that for such purpose they may refer to, and the court may consider, the transcript of evidence. Appellants' assignments of error indicate how far the application of the Sweet rule would inevitably carry us. We cite only some examples of this.

The trial court found that in 1937 the predecessors of the parties had agreed upon a division of the use of the range. Appellants do not assert that there is no evidence of such agreement, but contend that it is not binding upon them because certain of their predecessors, users

of parts of the range involved, were not parties to it. So we are necessarily led to a consideration of all the evidence establishing the range rights of the several predecessors of appellants to ascertain whether their being parties to the agreement was necessary to its effectiveness.[1]

Appellants contend that failure of respondent's predecessors to contest the stock watering application of appellants and their predecessors in the years 1944 and 1946 for Trudgen Well, Blair Well and Chance Well established as a matter of law that respondent was precluded by the terms of the 1925 stock watering law from any grazing rights within a radius of three miles from any of these wells. But this involves a consideration of whether the evidence shows that appellants watered sufficient numbers of livestock at these watering places "to utilize substantially all that portion of the public range readily available to livestock watering at that place" (Stock Watering Act of 1925, sec. 2, sec. 7980, N.C.L.1929), and whether there might be any substantial interference with or impairment of existing rights (id.). Further necessary investigations of the evidence suggest themselves by the issue raised, but we shall not pursue them.

Appellants contend that the trial court erred in refusing to recognize their grazing rights under the 1931 grazing law growing out of their "customary and established use." But this entails a consideration of the

---

[1]With reference to the agreement itself, the written opinion of the learned district judge says: "The evidence shows that, from the time of the conversation referred to, the graziers of the valley, including the Trudgens, Marsh and the United Company and their successors, adapted their grazing use, respectively, in conformity with the understanding referred to, the sheep using the area to the west of the wash and the cattle to the east, allowing for cattle drift to the west." Later, after describing in some detail the use of the range and water rights made by the parties and their predecessors, the learned judge continued: "The use, as herein described, has been acquiesced in by all persons concerned from the beginning of the practice referred to in or about 1937 until the controversy involved in this suit."

evidence to determine whether appellants had "become established" in such use "by operation of law or under and in accordance with the customs of the graziers of the region involved," and whether such use was "continuous, open, notorious, peaceable and public," and whether it continued "seasonably for a period of five years" prior to March 30, 1931 (Grazing Act of 1931, sec. 1, sec. 5581 N.C.L.1931–1941 Supp.), and whether there were "any valid rights or priorities" existing in others, which under the terms of the act could not be modified or compromised by its provisions (id., sec. 7, sec. 5581.06, N.C.L.1931–1941 Supp.). Again the contention suggests further necessary consideration of other evidence and again we refrain from further enlargement.

Error is asserted in the court's finding that respondent had established his ownership of the waters of "Henry's Well." But it is conceded that the well was dug by respondent's predecessor in 1933. Many factual considerations would determine the validity and extent of the stock watering rights resulting therefrom.

It is said too that the court erroneously gave effect to respondent's hauling of water in tank trucks from Henry's Well to various points on the range to water his sheep from tanks or troughs, thus greatly extending the range rights awarded respondent. If so, we do not find it reflected in the judgment or any of the findings, but again the contention indicates how far the rule in the Sweet case carries us in investigation of the question as to whether there is *any* evidence to sustain the findings. It is also asserted that a "division of the range" made by the trial court was declared to be beyond its power in Itcaina v. Marble, 56 Nev. 420, 55 P.2d 625, 626. We avoid a discussion of the three opinions in that case necessary to a full consideration of the point raised, and satisfy ourselves with the observation that the effect of the trial court's findings and judgment was simply to grant in part and to deny in part the injunction sought

by appellants and respondent, respectively. If appellants insist that this was in effect a "division of the range," then every decree in a proceeding of this nature would in a sense divide the range, unless all of the grazing and stock watering rights were found to be in one of the parties. It is in any event evident how far we should be led by the rule of the Sweet case upon this assignment of error.

All of the foregoing examples illustrate the lengths to which the natural and necessary implications of the rule in Sweet v. Sweet carry us. It would have been a simpler matter, and certainly less of a burden upon the court, to perpetuate the rule (adopted in a single sentence without citation of authority or reason), to thumb through the transcript, and fasten upon some bit of testimony by one of respondent's predecessors indicating such exclusive use of the range by cattle as to furnish *some* evidence supporting the findings. In this we should be following Benson's Estate and Richards v. Steele. We have not felt ourselves justified in pursuing such course.

It is said that if we do not examine the transcript to determine whether there is *any* evidence to sustain the findings, we are departing from our avowed purpose to determine cases upon the merits wherever possible. This situation, however, resulted from our being compelled to dismiss the appeal from the order denying a new trial for lack of statutory undertaking on such appeal. Nor do we feel that the rejection, at this stage of the proceedings, of the rule advanced in Sweet v. Sweet is one that works harshly or prejudicially upon the appellants. Our adherence in Jensen v. Reno Central Trades & Labor Council, 68 Nev. ......, 229 P.2d 908, to the rule of stare decisis was for the protection of rights that could and did accrue out of reliance on rules of law theretofore enunciated by this court. The reversing of a procedural rule, such as the one involved here, is attended by no such effect. The careful and painstaking review of the

facts by the trial judge, as well as briefs and the oral arguments of counsel, leave us in no doubt but that a perpetuation in this case of the "no evidence" rule would simply leave us in the lap of the "conflicting evidence" rule, under which the findings would not be disturbed. Sweet v. Sweet is hereby expressly overruled, insofar as it holds that, upon an appeal from the judgment alone this court may examine the evidence to determine whether there is any evidence to support the judgment.

It is not contended that any error appears from the judgment roll in itself or as in any way modified or affected by anything appearing in the transcript of the proceedings.

The judgment is hereby affirmed with costs.

EATHER and MERRILL, JJ., concur.